## JOSEPH CURWEN v. APPLETON MANUFACTURING COMPANY.[1]

May 12, 1916.

Nos. 19,586—(32).

**Corn husker — violation of statute — dismissal of action.**

Assuming that there was sufficient evidence to go to the jury upon the question whether respondent sold a corn husker and shredder in this state which did not comply with the statute (section 3884, G. S. 1913), in that it was not "so guarded that the person feeding said

[1]Reported in 157 N. W. 899.

Note.—On the liability of manufacturer of dangerously defective machinery see note in 2 L.R.A.(N.S.) 303, 5 L.R.A.(N.S.) 1103.

As to the liability of manufacturer, packer, or vendor to persons not in priority of contract from injury from defects in article sold see notes in 19 L.R.A.(N.S.) 923; 48 L.R.A.(N.S.) 213; L.R.A. 1916B, 879.

On the effect of concurrent negligence of third person see note in 17 L.R.A. 33.

machine shall be compelled to stand at a reasonably safe distance from the snapping rollers," the court nevertheless did not err in dismissing the case as to respondent, the seller of the machine upon which plaintiff was injured, for it clearly appears that the violation of the statute, if such there were, was not the proximate cause of the injury.

Action in the district court for Hennepin county against defendant Bofferding and the Appleton Manufacturing Company to recover $30,750 for personal injury received while in the employ of defendant Bofferding. The case was tried before Fish, J. who when plaintiff rested granted separate motions of defendants to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Hall & Tautges,* for appellant.

*Kerr, Fowler, Schmitt & Furber,* for respondent.

HOLT, J.

Plaintiff, while feeding a corn husker and shredder, lost his hand. He brought this action to recover damages from his employer and also from the manufacturer and seller of the machine. Upon the conclusion of the testimony the court dismissed the action as to both defendants. Plaintiff excepted, and now appeals from the order denying a new trial as to the maker and seller of the machine, the defendant Appleton Manufacturing Company.

The negligence charged against respondent, is selling a machine which violates our statutes in respect to safety devices and guards for the feeder. If the sale of a machine of this construction is proscribed and penalized, it is clear that negligence *per se* was established against respondent, for it is admitted that it manufactured this machine and sold it in this state. Tvedt v. Wheeler, 70 Minn. 161, 72 N. W. 1062; Glockner v. Hardwood Mnfg. Co. 109 Minn. 30, 35, 122 N. W. 465, 123 N. W. 807, 18 Ann. Cas. 130. But of course plaintiff is required to show not only a violation of law, or negligence, but also that such negligence was the proximate cause of the injury.

Appellant claims that he has proven respondent guilty of violating the provisions of section 3866 and also of section 3884, G. S. 1913. It is not necessary to consider whether section 3866 is applicable at all to

an agricultural machine or implement like a corn husker and shredder, for the matters wherein the machine in question is claimed to offend are specifically covered by the last mentioned section. It reads: "No person, firm or corporation shall sell, offer or expose for sale any machine to be operated by steam or other power, for the purpose of husking or shredding corn, or cornstalks, unless the said machine shall be provided with reasonable safety devices, approved by the commissioner of labor for the protection from accidents from the snapping rollers and husking rollers, and shall be so guarded that the person feeding said machine shall be compelled to stand at a reasonably safe distance from the snapping rollers." The allegations of respondent's negligence in the complaint are: That this machine was not provided with reasonable safety devices, and was not so guarded that the feeder was compelled to stand at a reasonably safe distance from the rollers mentioned. We may also observe that, because section 3866 prohibits the manufacture of a machine not adequately guarded at danger points, it is not necessary to determine its applicability to this machine, for section 3884 in denouncing its sale is equally broad, so far as the accident here is concerned, and covers the defect of the machine to which, in any event, such accident can be attributed—the fact of manufacturing does not augment the negligence that might be found in the sale.

It is difficult to convey by words an adequate representation of the machine so as to present the question to be decided, and therefore only a brief and partial description will be attempted. The machine is portable and somewhat resembles the old fashioned grain thresher or separator. But instead of a cylinder and concaves there are here two four-inch corrugated rollers, called snapping rollers, one above the other, revolving toward each other and in close proximity, so that when the butts of the cornstalks are shoved against them they grip firmly and rapidly pull the stalks through toward the shredder head behind, and, as the ears reach the rollers, the space between being too narrow to allow them to pass, they are snapped off and fall in front of the rollers upon the husking apparatus, some 16 inches below, which picks off the remaining husks, if any, from the ear. Neither this husking apparatus, nor the shredder behind the snapping rollers, could cause or contribute to plaintiff's injury, so no further description thereof is necessary. The feeder does not

stand in front of the machine, but at the side and about three feet from the rollers with his left side toward them. The foot board upon which he stands is about three feet lower than the feeding trough and rollers. The bundles of corn are thrown upon a feed table on the side of the machine opposite to the feeder, with the butt ends towards the rollers. The feeder reaches over, pulls a bundle towards him into the feeding trough, which is a few inches lower than the feed table, and slants slightly towards the rollers; he cuts the band with his right hand and spreads the stalks and with the left pushes them towards, and so as to engage, the snapping rollers. The feed trough ends some 16 inches from the rollers. A hood covers the rollers above and extends a few inches in front of where the feed trough ends. The feeder has a plain view of the rollers while at work, except, perhaps, when the stalks are being heavily fed. Occasionally a small ear, or one on a slender or slimsy stalk, fails to snap off, and not being small enough to pass between the rollers it remains hanging in front of them, somewhat impeding the feeding of the machine. The machine is provided with a so-called safety lever, which extends out at right angles from the side of the machine, distant 36 inches from and to the front of the rollers, and about the same distance up from the foot board, so that as the feeder stands at his work this safety lever extends out past his left hip. Very little pressure by the hip or body of the feeder against this lever instantly stops the revolutions of the snapping rollers. He therefore cannot in feeding come closer to the rollers than 36 inches, but by bending over sideways and carefully avoiding pushing against the lever, he is able, if he is medium tall, to reach the rollers with his fingers. The respondent's evidence was that when it became necessary to dislodge any hanging ear, the way to do so was to press against the safety lever, thus stopping the rollers, then pull out the ear. Plaintiff's employer testified it could be done by heavier feeding, and also by poking it loose with another stalk.

No ruling of the court is sought to be reviewed except the single one of the dismissal of the action as to respondent. If, therefore, upon all the evidence received a *prima facie* case was made against respondent, there must be a reversal, otherwise an affirmance.

The trial developed the theory alleged in the complaint that plaintiff's employer negligently instructed him with reference to removing hang-

ing ears, and that, in following such instruction by attempting to dislodge an ear by poking at it with a short stalk, his fingers and hand were drawn into the rollers. Of course, respondent is not chargeable with the negligence of plaintiff's employer as to instructions or want of instructions; but if respondent was negligent, that is, violated the statute in selling a prohibited machine, and such negligence proximately caused or contributed to the injury, it is not relieved of responsibility because the employer's negligence also contributed thereto.

The only evidence adduced to show that the machine did not comply with the law, either as to safety devices or the place where the feeder was compelled to stand, was the machine itself (or a duplicate of it) exhibited to the jury, and the testimony of an employee of a rival firm which sells only self-feeding corn huskers. As to the latter's testimony it adds little if anything to what is gained by a mere inspection of the machine. We shall assume, however, that there was a jury question as to respondent's negligence as to the machine being so guarded that the feeder is compelled to stand at a safe distance from the snapping rollers, although the argument is near at hand and cogent that three feet is a reasonably safe distance while the feeder attends to the feeding, especially in view of the efficient guard afforded by the safety lever. We think the evidence manifestly fails to overcome the *prima facie* effect of the approval of the labor commissioner that the machine was equipped with reasonable safety devices.

Notwithstanding the above assumption of there being a jury question as to negligence, or, more accurately, as to the machine's compliance with the requirement of section 3884, in respect to the feeder's position, we are of the opinion that such negligence, if existent, was not the proximate cause of the injury. Plaintiff clearly saw the rollers and knew that he would get hurt if his fingers came in contact with them, he also knew that once a stalk got caught between the rollers he could not pull it back. With this knowledge and a clear view of the situation, he determined to remove an ear that got hung up in front of the rollers. He did not adopt the method, a perfectly safe method, designed by respondent, namely, to stop the rollers by means of the safety lever, so conveniently at hand and so easily operated. But on the contrary he chose to approach the rollers when in motion. In accomplishing that purpose he could as well

have got near enough by stepping around the safety lever, or by going on the other side of the machine, or by getting up on the feeding trough. He elected to reach over and with a short corn stalk attempted to poke out the ear. If he were set upon dislodging the ear while the rollers were running, neither the distance at which the feeder was compelled to stand away from them while feeding, nor the safety devices could well hinder the attempt, for necessarily there must be an opening for the cornstalks to reach the snapping rollers. A maker or vendor of a machine has a right to expect that the operators thereof will pursue the method of operation clearly called for by the design and construction of the machine itself, and make a reasonable use of the appliances thereon intended for safeguards as occasion arises. That plaintiff should remove suspended ears when the rollers were in motion was not suggested by the feeder's position, but quite the contrary. This is not a case where, in feeding, the feeder slips and involuntarily comes in contact with the rollers, but one where he deliberately and unnecessarily approaches a known danger.

We need not consider plaintiff's alleged contributory negligence or the assumption of risk, for our conclusion is that the violation, if any, of a statutory provision by respondent in the sale of the machine in question, cannot, upon this record, be considered the proximate cause, or a contributing cause of plaintiff's great misfortune.

Order affirmed.