### STATE v. CLARENCE HINES.[1]

April 8, 1921.

No. 22,277.

**Indictment.**

1. The indictment states a public offense.

**Conviction sustained by evidence.**

2. The evidence amply sustains the conviction.

[1]Reported in 182 N. W. 450.

**Photographs in evidence.**

3. The introduction of photographs in evidence rests largely in the sound discretion of the trial court, and no abuse of such discretion appears in the rulings here challenged.

**Reference in charge to statute.**

4. The charge in the indictment being that the crime was committed by driving an automobile at excessive and unlawful speed against a car in which the person killed was riding, it was proper for the court to call the attention of the jury to the statute requiring drivers to slow down the speed on approaching highway crossings, the testimony showing that the collision occurred at or near such a crossing.

**Refusal of new trial.**

5. No error was committed in refusing a new trial on the showing as to newly discovered evidence.

**Definition of "reasonable doubt."**

6. No reversible error can be predicated on the omission to define the term "reasonable doubt" in the charge.

Defendant was indicted by the grand jury of Lyon county charged with the crime of manslaughter in the second degree, tried in the district court for that county before Olsen, J., who at the close of the testimony denied his motion for a directed verdict, and a jury which found defendant guilty. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*O. A. Lende* and *William R. Mitchell,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Rolland Mathews,* County Attorney, for respondent.

HOLT, J.

Defendant was convicted of second degree manslaughter, charged to have been committed by driving an automobile at excessive and unlawful speed against a car in which Ingra Thorson was riding, thereby causing her death. He appeals from the order denying a new trial.

A state road runs north from Slayton to Tracy. A short distance south of Tracy it is crossed at right angles by another road running east from Balaton to Walnut Grove. Both roads are four rods wide, with a 26 foot nicely graded and graveled roadway along the center. The grade of

both is practically level for quite a distance each side of the crossing. In the early afternoon of September 22 last, one Ike Garton was driving a Ford touring car easterly on the Balaton road and turned north at the crossing onto the Tracy road. As he so turned, defendant, in a Buick touring car also going north on the latter road, came up from behind the Ford and struck it with such force that it was completely overturned, and Ingra Thorson, one of the occupants, was so thrown and crushed that death quickly followed. In the front seat of the Ford beside Garton were his wife and baby, and in the rear seat were Mrs. Thorson and three or four of her children. The only occupants of the Buick were defendant and a Mr. Hokman, a helper. Defendant was then a mechanic in a garage at Tracy, and had taken this Buick car out to run it in an attempt to locate a "knock" in the machinery. He had run south toward Slayton for about a mile and was returning to Tracy when the collision occurred.

A demurrer to the indictment was overruled and error is assigned on the ruling. Neither the brief nor the oral argument points to any flaw in the indictment, and we discover no fatal defect therein.

The proof is overwhelming that this fatality was the result of defendant's culpable negligence, and there should be no new trial, unless the record discloses some substantial prejudicial error. In behalf of defendant an earnest plea for another trial is made because of his previous good character and indelible stain which a conviction of this sort places on his whole future life. We are not insensible to the appeal, but, on the other hand, the one whose life was prematurely and needlessly snuffed out by defendant's recklessness and those so sorely bereaved should not be forgotten. And we must take notice of the fact that the automobile in the hands of the careless and reckless has become one of the most active agents of accidental death and destruction, even though courts refuse to place it generally in the class of dangerous instrumentalities, for it is easily controlled and more safe than a team in the hands of the careful and prudent. Taking the testimony introduced by the defense, we find that defendant was an experienced driver and well acquainted with the cross-road; that he did not see the Ford until within 15 or 18 feet thereof, when it was headed towards Tracy, and was to the right of the center of the road, but had not quite straightened out from making the turn; that he was then practically back of the Ford which was going at a speed

of from 22 to 25 miles an hour; that he struck the Ford between its left rear wheel and the transmission with the right front wheel of the Buick; that the point of collision was 33 feet north of the center line of the Balaton-Walnut Grove road; that the momentum of the cars carried the Ford 56 feet further north, where it was left completely overturned in the gutter on the right hand side of the roadway, and the Buick 93 feet a little east of the left gutter; that, as the collision was taking place, the hind end of the Ford was tossed up and the occupants pitched forward, so that Mrs. Thorson struck the ground near the right gutter 86 feet north of where the cars came in contact, and one of the children was thrown 16 feet still further north. No more telling evidence of the terrific speed of the Buick when it struck the Ford, traveling in the same direction, can be found than this fact that the occupants of the car were hurled forward such distances from where the car itself landed. If it be assumed that the Ford was going at as great a speed as a witness for defendant stated, it only demonstrates that the Buick must have been traveling at a relatively much higher speed to produce the results referred to. Of course, in this charge of manslaughter, it is no defense to claim that the negligence of the driver of the Ford contributed to Ingra Thorson's death.

At the time of the accident there had been no frost. Nearly two months later, when frost had got in its work, four photographs were taken, two with the camera placed near a spot from where a witness for the state observed defendant speeding immediately before she heard the crash of the collision, the instrument being focused toward the two points where the automobile passed her vision, and two with the camera at a point in the Tracy road 400 feet south of the center of the road crossing, and focused so as to take in the crossing and a few rods of the road toward Balaton. These photographs were received over defendant's objection. To what extent frost had changed and destroyed vegetation and increased the outlook was gone into quite extensively before the photographs were admitted. Of course, such permanent objects as telephone and electric poles, tree trunks, signboards, fences and the traveled roadways, were the same as on the day of the accident. We think that the jury, with the testimony as to the effect of the frost on the foliage, could not go astray in the use of the exhibits, and no prejudice resulted to de-

fendant from their reception. The trial court has somewhat of a discretion in determining whether a proper foundation has been laid for the introduction of photographs, and whether their use will be helpful to the jury rather than misleading. There was no abuse of this discretion in this instance.

The indictment charged that defendant committed the manslaughter by driving an automobile at an excessive and unlawful speed against the car in which Mrs. Thorson was riding, thus killing her. In submitting the case the court read to the jury section 2635, G. S. 1913, and also that part of section 2633 which requires drivers to slow down the speed in approaching a cross-road. This was proper. The location with reference to cross-roads has much to do with the rate of speed that may be used. It is also to be noted that the indictment is not for a violation of either of the sections referred to, but is under the homicide statute. And under such an indictment it was proper to call the attention of the jury to the statutory enactments bearing upon the issues in the case.

The motion for a new trial was also based on newly discovered evidence to be obtained from John Haugen, the chief of police of the city of Tracy. At the request of Mr. Haugen, and within two hours after the accident, defendant came to the city attorney's office in Tracy, and was questioned as to its cause in the presence of the city attorney, Mr. English, the mayor, Mr. Kelley, and Mr. Haugen. He stated that, according to the testimony of Mr. Kelley: "Well, I am going to tell the truth about it. We was going like hell. I had my head down like this (indicating) listening for knock." No effort was made by defendant to procure the testimony of either Mr. Haugen or Mr. English during the trial, nor was a delay asked so that they might be produced. Defendant, when cross-examined relative to these statements in the city attorney's office, went no further in denial thereof than saying that he had no recollection of referring to speed, and gave, as a reason for want of memory, that his mind was temporarily unbalanced from the experience he had just passed through. Mr. Haugen's affidavit, stating what he could testify to respecting defendant's admissions in the city attorney's office were a new trial granted, would go to contradict the words quoted from Mr. Kelley's testimony. Aside from the fact that the question of the new trial on this ground was largely one of judicial discretion, it cannot be

well urged that proper diligence was here shown. Had application for time to obtain either Mr. Haugen or Mr. English as witnesses been made when the testimony of Mr. Kelley disclosed the alleged damaging admissions, the trial court would no doubt have readily granted the same. It may also be observed that defendant made no great attempt to meet the charge of excessive speed, not even the helper who rode with him being called as a witness or his absence explained. We do not think the showing entitled defendant to a new trial.

Complaint is made because the meaning of "reasonable doubt" was not given in the charge. No instruction was requested and no suggestion offered on that subject before the verdict was returned. In that situation, even if the omission were one of substance, which it is not, it would not be a ground for a new trial. State v. Sailor, 130 Minn. 84, 153 N. W. 271.

The other errors assigned have been considered, but require no discussion.

The order is affirmed.