Nos. 34,838 and 34,839

RUDOLPH R. JILKA, *Appellee,* v. THE NATIONAL MUTUAL CASUALTY
COMPANY OF TULSA, *Appellant.*

JOSEPHINE JILKA, *Appellee,* v. THE NATIONAL MUTUAL CASUALTY
COMPANY OF TULSA, *Appellant.*

(106 P. 2d 665)

Opinion filed November 9, 1940.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the
appellant.

*Gerald C. Stover, C. M. Williams, D. C. Martindell, W. D. P. Carey, Wesley
E. Brown, E. B. Brabets,* all of Hutchinson, *C. H. Brooks, Howard T. Fleeson,
Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the ap-
pellees.

The opinion of the court was delivered by

ALLEN, J.: The plaintiffs, Rudolph R. Jilka and Josephine Jilka,
his wife, brought separate actions against the defendant insurance
carrier for personal injuries and property damage received in a rear-
end automobile-truck collision. The cases were consolidated for
trial, and judgment was entered for plaintiffs. Defendant appeals.

The defendant company carried the liability insurance on the Melton & Enright truck which was being operated under a contract carriers' permit.

The collision occurred about noon August 9, 1938, on highway No. 40, west of Walker. At this point the road is a black-top, twenty-two feet wide, with shoulders on each side between six and seven feet wide. At the time stated, the truck of Melton & Enright was being driven west on this highway, and a short distance west of Walker ran into a dust storm. The wind was blowing from the south and the dust area was a little more than a quarter of a mile wide. Shortly after entering the dust-storm area the truck became disabled. As stated by the driver: "My motor began going bad. It acted like it ran out of gas. . . . I had a very short warning it was going to stop. I had enough warning to pull over on the shoulder, but I didn't have up any speed. I imagine the shoulder was hard. The truck wouldn't roll along enough to get on the shoulder after the motor quit. It just missed a few times and then it quit." A highway patrolman testified that the right wheels of the truck were about two feet south of the north edge of the black-top.

The witness, Sellman, driver of the truck, testified:

"The motor stalled after we had entered the dust storm a short ways. The first thing I tried to do was start the motor. I tried the starter and turned the other fuel tank on and it still wouldn't start. I turned on my lights as I entered the storm, and they were turned on at all times front and back. The traffic went along by there before the accident. I don't know just how many before I got out of the truck. I do not know who they were. After I couldn't start my truck I took my flags and started to place them. I went to the rear first on the run, and I went fifty steps, and stepped approximately three feet. It would probably be more than that when I am running. I put one to the rear of the truck just on the very edge of the oil mat, and then a truck came along and I jumped on their running board and asked them to pull me out of the dirt. The man on the other truck asked me to watch the traffic while he pulled out around my truck. He backed up and we hooked the chain on our truck and on his truck and he pulled ahead and the chain came unfastened from his truck. After I put out the flag back of the truck I went on west and put up another flag. After the chain came unfastened and we were backing up again we heard a noise; I imagine it was the tires sliding on the oil and we got out from between the two trucks for fear we might get crushed. . . ."

The petition alleged that the visibility in the dust area was 100 to 150 feet. Plaintiffs' witness, Fordham, arrived just after the accident. He stated: "The atmosphere was very thick with dust, visibility very poor. The dust was so thick that we ourselves were

watching the side of the road in order to get along safely. I would say the visibility was around twelve to fifteen feet. The storm would diminish for a second and you could see ninety feet, but it quickly closed again and the visibility was again poor." The driver of the truck testified that the visibility would vary. "Sometimes it would be very poor and then it would lighten up and you could see maybe as far as a hundred or two hundred or maybe three hundred feet."

The plaintiff, Rudolph R. Jilka, was driving a Ford Tudor sedan, and was accompanied by his wife and baby. He left Walker shortly before noon and drove west on highway No. 40. The petition alleged that he was driving 40 or 45 miles per hour, "and was a few hundred yards west of the town of Walker when he drove into said dust at which place he turned on his lights and slowed his car to a speed of thirty (30) to thirty-five (35) miles per hour." He testified: "I first saw the truck when we were approximately one hundred feet from it." He stated that when he realized the truck was standing still he slammed on his brakes. "It was very slick on account of the dust and gravel on the highway. My car skidded all the way and I rammed into the back end of that truck. . . ."

The car skidded 59 feet. As a result of the collision the Ford car was wedged under the truck, and a wrecker was necessary to remove it. The Ford dealer who sold the car to plaintiff in March, 1938, testified the car had been smashed in on the front end—the front end was caved in—pushed back. It damaged the generator and even the distributor and valve chambers and frame. The dealer had seen the car the day before the accident, and saw it shortly afterwards. It was worth $800 before and about $200 after the collision.

An expert witness called by plaintiffs stated: "I would say a car going about thirty miles an hour would stop in forty feet." With gravel on the road it would go "one car length farther and maybe two." The witness further testified, "I couldn't say how fast a car would be going to skid forty or fifty feet and hit the back end of a truck hard enough to wreck the car."

Various acts of negligence were charged, including failure to comply with certain statutory provisions, and failure to comply with the following rules of the State Corporation Commission of the state of Kansas:

"Paragraph 1, rule 10: Every motor vehicle operating upon the highways shall display headlights and dimensional marker light devices and reflectors as

required by law during the period from one-half (½) hour after sunset to one-half (½) hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred (500) feet ahead."

Provision 15 of rule 16:

"(a) Whenever any motor vehicle is disabled or stopped upon the traveled portion of any highway, or shoulder next thereto, and is unable or is not to move therefrom, during the time that lights are required, a lighted fusee shall be immediately placed on the roadway at the traffic side of the motor vehicle, and as soon thereafter as possible, and in any case within the burning period of the fusee one (1) other lighted flare (pot torch) or red electric lantern shall be placed on the roadway one hundred (100) feet (forty [40] paces) to the rear of the motor vehicle, after which one (1) other lighted flare (pot torch) or red electric lantern shall be placed on the roadway one hundred (100) feet (forty [40] paces) to the front of the motor vehicle, after which a lighted flare (pot torch) or red electric lantern shall be placed on the roadway at the traffic side of the motor vehicle.

"(b) For every motor vehicle transporting explosives, inflammable or corrosive liquids, compressed or poisonous gases, or other dangerous articles, red electric lanterns and no other shall be used as warning signals during the time that lights are required.

"(c) During such time as lights are not required, red flags shall be used in place of fusees, flares or electric lanterns as warning signals, and their placement shall be in the same manner as specified in part (a) of provision fifteen (15) of this rule."

The court instructed the jury that violation of the statutory provisions constituted negligence as a matter of law, and that violation of the rules of the commission above quoted "may be considered by you as evidence of negligence."

The jury returned a verdict for plaintiffs, and answered special questions as follows:

"1. Do you find that the operators of the truck of Melton & Enright were guilty of any negligence? A. Yes.

"2. If you answer question No. 1 in the affirmative, then state fully of what such negligence consisted. A. Did not place the proper signals back of the truck in compliance with the highway regulations of the state of Kansas.

"3. State at what rate of speed Rudolph R. Jilka was driving at the time the plaintiffs first saw the truck on the highway. A. Thirty miles per hour.

"4. State what, if anything, Josephine Jilka said at or immediately prior to the collision of Rudolph Jilka as to the manner in which he was operating the automobile. A. Nothing.

"5. State what, if anything, prevented Rudolph Jilka from stopping his car prior to reaching the Melton & Enright truck. A. Lack of warning and poor visibility.

"6. State the distance the Jilka car was from the Melton & Enright truck when the plaintiffs first observed the truck. A. 100 feet.

"7. State the distance the Jilka car was from the Melton & Enright truck when the brakes on the Jilka car were first applied. A. Sixty feet.

"10. State whether or not the lights on the rear of the Melton & Enright truck were burning immediately prior to the collision. A. Yes.

"12. State whether or not Rudolph Jilka was guilty of any negligence which was one of the proximate causes of the accident in question. A. No.

"15. If you answer question No. 14 in the negative, state what prevented him from passing the truck in safety. A. Oncoming lights of another car.

"16. At the rate of speed at which you find Rudolph R. Jilka was driving immediately before the collision, in how many feet could he have stopped his car? A. We do not know."

Error is assigned in overruling defendant's demurrer to the evidence of plaintiffs, and in overruling defendant's motion for judgment notwithstanding the general verdict.

Under the findings of the jury the operators of the truck failed to place proper signals back of the truck in compliance with the highway regulations of the state. As the failure to place signals was the only act of negligence found by the jury, such special finding acquits the defendant of every other charge of negligence stated in the petition. (See *Stevens v. Allis-Chalmers Mfg. Co.*, 151 Kan. 638, 100 P. 2d 723, and cases there cited.)

The plaintiff, Rudolph Jilka, first observed the truck when he was one hundred feet from it. The plaintiff so testified and this was the finding of the jury.

The purpose of the signals required by the regulations was to give warning of danger. Plaintiffs saw the truck when one hundred feet away. They were then traveling at a speed of thirty miles and could stop at a distance of forty or fifty feet. Manifestly, the absence of signals did not cause the harm to plaintiffs.

In *Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663, it was stated:

"It is well settled that where the act found as negligence did not cause the injury complained of there can be no recovery." (p. 141.)

In *Eldredge v. Sargent*, 150 Kan. 824, 96 P. 2d 870, it was held that where absence of lights or warning signals do not prevent a motorist from seeing a vehicle in time to avoid colliding with it, their absence is not the proximate cause of a resulting collision.

Under our statute, G. S. 1935, 60-2918, when the special finding of facts is inconsistent with the general verdict, the special finding controls the general verdict. A general verdict imports a finding upon all issues in the case not inconsistent with the special finding, and nothing will be presumed in favor of the special findings. The

special findings shall be given such a construction, if possible, as will bring them in harmony with the general verdict. (*Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 96 P. 2d 877, and cases cited.) But these well-established rules are subject to the statutory provision that when special findings are inconsistent with the general verdict, the judgment must follow the special findings.

As we have seen by the answer to special question No. 2, the defendant was exonerated from all acts of negligence, except the failure to comply with the highway regulations. Under the answer to question No. 10, plaintiffs observed the truck when one hundred feet away. If we assume that the failure to place the signals in compliance with the highway regulations was evidence of negligence, it would not avail plaintiffs. The failure to place the signals was not the proximate cause of the collision. Plaintiffs were traveling at a speed of thirty miles per hour—they saw the truck in time to avoid the collision. Clearly there was no causal connection between the failure to place the signals and the injuries sustained by plaintiffs in the collision. The motion of defendant for judgment notwithstanding the general verdict should have been sustained. The judgment is reversed and the cause remanded with directions to enter judgment for defendant.

HARVEY, J., dissents.