MARTIN FLAHERTY v. GREAT NORTHERN RAILWAY COMPANY.
THOMAS CONROY v. SAME.[1]

December 1, 1944.

Nos. 33,774, 33,775.

[1]Reported in 16 N. W. (2d) 553.

*John Edmund Burke* and *Clifford W. Gardner,* for appellants.
*A. L. Janes* and *J. H. Mulally,* for respondent.

PETERSON, JUSTICE.

In separate actions, plaintiff Conroy, as the owner and driver of an automobile, sought to recover for personal injuries and property damage, and plaintiff Flaherty, as his guest passenger, sought to recover for personal injuries sustained about midnight on April 30, 1942, as the result of a collision between Conroy's automobile and the side of a freight car on a railroad track extending across Grove street in the city of St. Paul. The complaints allege that the freight car was placed across the street in violation of statute and ordinance and that a view of it was obstructed by steam and smoke from one of defendant's locomotives. The defenses were that the collision was with a freight car which was part of the train and not one standing alone; that defendant was not guilty of negligence; and that plaintiffs were guilty of contributory negligence.

The collision occurred on one of defendant's seven switch tracks which extend northerly and southerly across Grove street in the block bounded on the east by Olive street and on the west by Pine street. The tracks lead north to defendant's main lines and south to numerous loading platforms and buildings. The area is a commercial one. There are electric street lights maintained by the city at the corners of Grove and Pine and Grove and Olive streets.

Plaintiffs' version of the accident is that earlier in the evening Conroy had been on the east side of St. Paul, where he picked up Flaherty and one Whittier to give them a ride downtown. Whittier was not produced as a witness because he could not be found. Conroy testified that it had rained heavily for about two hours early in the evening and that at the time of the collision it was "a little wet"; that as they got near Olive street they saw a steam switch engine proceeding north across Grove street emitting steam and smoke and that the street light at the Olive street corner was not lit. They claim that there was a little fog; that the smoke circulated around toward the back of the engine and stayed down near the ground for awhile and then went up; that Conroy was driving at a speed estimated to be from 10 to 20 miles per hour; that he did not drive through the smoke and steam but approached it; that when the smoke and steam had lifted Conroy suddenly saw a freight car about 25 feet ahead of him standing across the path; that he tried to stop, but without success; and that his automobile collided with the freight car.

According to defendant's version, the street light at Olive street was lit; no steam locomotive crossed in front of plaintiffs, and consequently there was none present to emit steam and smoke as claimed; Conroy's car collided not with a freight car standing alone across the street but with the side of a freight car which was part of a train; and consequently the collision was due solely to Conroy's negligence in failing to see the train, clearly visible under the circumstances.

To substantiate its version, defendant called as witnesses four members of a switching crew who were engaged that night in switching operations at the place in question with a Diesel locomotive, a flagman or watchman, and a city policeman, who at the time of trial was in military service. All of them testified that the street lights at both Olive and Pine streets were lit. Members of the switching crew and the flagman testified that it was dry that night, but the latter also testified that he was home in bed when plaintiffs claimed it rained. They also claimed that there was

no fog, steam, or smoke at the scene of the accident and that there was no steam locomotive engaged in switching operations at the time and place in question. It was not shown that they had made any observation with respect to the matters testified to prior to the collision. The source of their knowledge that there was no steam locomotive in use at the time and place mentioned was not revealed, except that the fireman said that there was none there that he knew of and that he did not see any. Furthermore, although the watchman was on the lookout on the west side of the train and the light from Conroy's automobile showed under the cars, he testified that he did not see the light from Conroy's automobile as it approached. The testimony of defendant's witnesses was to the effect that there were about 20 freight cars south of Grove street on the track near Pine street; that the Diesel switch engine pushed a string of four or five cars ahead of it to connect with the other 20; that these cars were coupled with the others preparatory to moving all of them northward across Grove street; that after the coupling was made the train extended from a point south of Grove street to a point north of it; that while the train was standing and obstructing Grove street the switch foreman, who was in charge of the train and the switching operations, went into a shanty nearby to use a telephone to get orders concerning the movement of the train; and that while he was so engaged Conroy drove his automobile into the side of the freight car standing across Grove street.

We do not state the facts upon which the defense of contributory negligence was based, except that there was evidence to show that Conroy had an odor of liquor on his breath and that Flaherty had been drinking to such an extent as to appear to be intoxicated, for which reason he was taken into custody. Notwithstanding their condition, they apparently were able to observe and comprehend what transpired.

Upon the trial plaintiffs failed to offer any proof of the ordinance, but that fact is not important in the view we take of the case. The court submitted the issues of negligence and contributory negligence to the jury with an instruction that plaintitffs were

not entitled to recover, unless defendant's negligence was the proximate cause of their injuries. Plaintiffs had verdicts. Upon defendant's motion, the court in both cases ordered judgment in its favor notwithstanding the verdicts upon the ground that it was not negligent and in Conroy's case upon the additional ground that he was guilty of contributory negligence. Plaintiffs appeal.

■ Regardless of whether it was guilty of common-law negligence, defendant is liable as a matter of law for intentional violation of statute proximately resulting in the injuries to plaintiffs. At least three statutes denounce the obstruction of a highway as a misdemeanor. Two of them provide in general terms that to obstruct a public highway is a misdemeanor. Minn. St. 1941, §§ 160.34, subd. 1, 616.01(3), (Mason St. 1927, §§ 2615, subd. 1, 10241[3]). The third, in specific terms applicable to obstruction of a highway by means of a train or railway car, provides that it shall be a misdemeanor to "obstruct any public road or street by leaving, placing, keeping or causing to be left, placed, or kept, any railway car upon or across the same, or to stop, or cause to be stopped, any engine or train of cars across any public road or street except for a sufficient time, not exceeding ten minutes, to couple or separate the cars." Section 616.31 (§ 10530). The purpose of these statutes is to secure to everyone the enjoyment of the unobstructed use of roads and streets. A person is civilly liable to another sustaining harm separate and distinct from interference with the public right of travel caused by his intentional obstruction of a street in violation of statute. Hanson v. Hall, 202 Minn. 381, 279 N. W. 227. The cited case involved an obstruction of the use of a highway by the driver of an automobile. The rule is applicable in railroad crossing cases. By the overwhelming weight of authority, the obstruction by a railroad train or car of a road or street in violation of a statute or ordinance renders the railroad civilly liable for an injury proximately resulting therefrom. Annotation, Ann. Cas. 1915B, 642. The numerous cases cited in the annotation in support of the rule stated apply the well-settled rule, recently applied in Wessman v. Scandrett, 217 Minn. 312, 315, 14

N. W. (2d) 445, 446, that violation of a statute intended to protect travelers on a highway is "negligence *per se*." In the instant case, it makes no difference whether plaintiffs' or defendant's version be adopted. According to the former, defendant obstructed the street with but one freight car; according to the latter, with a train of freight cars. There can be no doubt that placing the freight car across a street constituted an obstruction of the street. Defendant did not attempt to justify the presence of the freight car across the street as being there for one of the purposes authorized by the statute, *viz.*, to couple it to or to separate it from other cars; it denied that the freight car was there at all. Likewise, occupation of the street by the train, as claimed by defendant in its version, was an unlawful obstruction of the street. The Diesel switch engine backed four. or five cars to couple them to other cars south of Grove street. By the terms of the statute, defendant had the right to stop its train for that purpose, but not to keep the train standing across the street after the purpose was accomplished. After the coupling was completed, stopping the train so as to occupy the street was an unlawful obstruction. The train was so obstructing the street while the switch foreman was in the shanty to use the telephone. Thereby defendant violated the statute.

Cases like Ausen v. M. St. P. & S. S. M. Ry. Co. 193 Minn. 316, 258 N. W. 511, and Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31, are not in point, because neither one of them involved liability for violation of the statute in question. The Crosby case could not do so, because the train there involved was moving. In the Ausen case, we had the distinction clearly in mind, because we there said (193 Minn. 322, 258 N. W. 514):

"* * * Nor need anything be said concerning cases where a motor vehicle, operating at night, stops on a highway without a tail-light and is run into, resulting in injury to persons or property; for there the violation of a statute furnished the evidence of negligence, such as Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22; nor those relating to an unlawful obstruction, as in Wicker v. North States Constr. Co. 183 Minn. 79, 235 N. W. 630."

■ The standing train or freight car, as the case might be, obstructing the street was, as the jury found, the proximate cause of the collision. There was evidence to sustain a finding that the train could not be seen because of some smoke and fog which obstructed, in part at least, the vision of Conroy, the driver of the automobile. Where the driver of an automobile collides with an obstruction upon a highway because atmospheric or other conditions interfere with his ability to see it in time to avoid the collision, the presence of the obstruction upon the highway is a material element or substantial factor in the happening of a resulting collision with it and consequently a proximate cause of any resulting injury. Anderson v. Johnson, 208 Minn. 373, 294 N. W. 224 (truck parked on pavement at night) ; Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605 (truck parked on pavement at night without lights) ; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630 (unguarded concrete mixer parked on pavement at night without warning lights). To same effect, see, Ball v. Gessner, 185 Minn. 105, 240 N. W. 100 (parking truck on highway in violation of statute) ; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283 ; and Forster v. Consumers Wholesale Supply Co. 174 Minn. 105, 218 N. W. 249 (trucks parked on pavement at night with no taillight burning). In Dickey v. Atlantic Coast Line R. Co. 196 N. C. 726, 147 S. E. 15, where an automobile, in which plaintiff was a guest passenger, collided with a standing train blocking a street, it was held that the question of proximate cause was for the jury.

■ The defense of plaintiffs' contributory negligence was not open to defendant. Where injury is sustained as the result of intentional obstruction of a highway in violation of the statute, the contributory negligence of the person injured is no defense. Hanson v. Hall, 202 Minn. 381, 279 N. W. 227, *supra*. The evidence here conclusively shows that plaintiffs' injuries were sustained as the result of defendant's intentionally obstructing the street with the train or the freight car, as the case might be, in violation of statute.

It is only where defendant's acts constitute an intentional violation of statute that the defense of contributory negligence is not open to him. Hanson v. Hall, *supra*. This type of case is to be distinguished from those arising under statutes declaring the effect of a violation thereof, as, for example, the highway traffic regulation act (Minn. St. 1941, §§ 169.01 to 169.97 [Mason St. 1940 Supp. §§ 2720-151 to 2720-294]), which in § 169.96 (§ 2720-291) provides that a violation thereof shall constitute only *prima facie* evidence of negligence of *any* party in a civil action. Such a statute deals with violations thereof in terms of presumed negligence of the parties, with the consequence that contributory negligence is a defense in actions based on a violation thereof. See, Rogers v. Minneapolis St. Ry. Co. 218 Minn. 454, 16 N. W. (2d) 516.

■ A further point is made by defendant that the weight of the evidence is so overwhelmingly in its favor that it is entitled to judgment notwithstanding the verdicts, under the rule of Spensley v. Oliver I. Min. Co. 216 Minn. 451, 13 N. W. (2d) 425; Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404, and similar cases. The argument is based upon the assumption that defendant's liability must be predicated upon common-law negligence, not violation of statute, and that the defense of plaintiffs' contributory negligence was open as a defense. With those questions out of the case, we have quite a different situation. True, only Conroy testified that it rained earlier in the evening, and both he and Flaherty testified that a passing switch engine gave off clouds of smoke and steam. Against them were some five witnesses, none of whom were asked about the rain. The flagman was in bed at home during the alleged rain. Not one of them disclosed the source of his knowledge that the steam switch engine was not being used at the scene, except that they had not seen or noticed such a switch engine. Their testimony was negative in effect. The flagman's testimony might be construed as meaning that defendant never used a switch engine on the tracks in question, but it is inconclusive as to the fact. There was no showing as to what observations were made by these witnesses. The flagman's testimony shows that he failed to ob-

serve the lights of Conroy's automobile as it approached from the east notwithstanding the fact that they were visible to him. On the other hand, the testimony of Conroy and Flaherty was positive that they had seen the switch engine and that it was giving off smoke and steam. Defendant's evidence was not conclusive. The jury would have been justified in taking the view that defendant's evidence was entitled to greater weight than plaintiffs', but was not bound to do so. The instant case does not come within the rule invoked. Rather, it comes within cases like Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757, 145 A. L. R. 530, where we held that the weight of the evidence is not determined by the number of witnesses. The weight of the evidence here was for the jury.

Reversed with directions to reinstate the verdicts.

