KATE MEDVED v. CLAUDE E. DOOLITTLE AND ANOTHER.[1]

July 6, 1945.

Nos. 34,007, 34,008.

---

[1]Reported in 19 N. W. (2d) 788.

*Charles H. Weyl,* for appellant C. M. Hallberg.

*Freeman, King & Geer,* for appellant Claude E. Doolittle.

*Karl Neumeier* and *Charles T. Wangensteen,* for respondent.

PETERSON, JUSTICE.

This is an action for wrongful death brought only for the sole benefit of decedent's minor daughter, notwithstanding the fact that decedent's husband also survived her. After verdict for plaintiff, defendants moved for judgment *non obstante.* They appeal from the judgment entered after denial of their motions.

The fatal accident occurred on December 22, 1943, at about four o'clock in the afternoon, daylight-saving time, on the part of highway No. 8 known as the Minneapolis-Forest Lake Cutoff. The highway has three paved lanes, each nine feet wide. At about 11 o'clock on the night before the accident, defendant Doolittle's heavily loaded tractor-trailer truck became disabled by the breaking of a bearing of the rear wheels of the tractor while he was proceeding on his right side of the road in the south lane toward Forest Lake at a point about three miles distant therefrom. Doolittle left the truck standing there, where it remained until after the happening of the fatal accident. He set out flares and then went to Forest Lake, where he engaged the defendant Hallberg to make needed repairs. The next day Hallberg caused the necessary repairs to be made.

At about three o'clock on the afternoon of the 22d, Doolittle, Hallberg, and the latter's employe went to the truck. Hallberg and his employe were to complete the repairs by putting the left rear wheel, which had been removed, back on the tractor. After

this was done, Doolittle intended to proceed with his truck. It was about ten degrees below zero at the time. Doolittle started the engine and turned on the heater in the cab so that Hallberg and his employe could warm themselves when they got cold. While they were thus engaged, decedent and her husband came from behind in the south lane in an automobile driven by him at the speed of 38 miles per hour, going in the same direction as the truck, and crashed into its rear end with such terrific force as to cause her death and demolish the automobile in which they had been riding.

The evidence is undisputed that parking the truck on the pavement left a clear and unobstructed strip of highway only 18 feet in width (the middle and north lanes each nine feet wide) instead of 20 feet as required by Minn. St. 1941, § 169.32 (Mason St. 1940 Supp. § 2720-217), and that flares were set out on the night of the 21st as required by § 169.75 (§ 2720-264) ; but it is conflicting as to whether flags were set out during the day of the 22d as required by the last cited statute.

The accident occurred during broad daylight. The day was "kind of cloudy." The windshield on the husband's automobile was somewhat frosted. Neither the fact that it was kind of cloudy nor that the windshield was somewhat frosted prevented the husband from seeing what was ahead of him. It is undisputed that decedent's husband first saw the truck parked in the south lane when he was a little over a quarter of a mile away and that he kept looking ahead. When queried concerning various distances at which he saw the truck, he testified that he remembered seeing it straight ahead of him when he was a little over a quarter of a mile away from it, 500 feet away, and 150 or 175 feet away. When he was only 150 or 175 feet away, he looked sideways at his wife, who was either sleeping or dozing with two hats in her lap. The next thing he knew the crash occurred; he had run directly into the rear of the truck. He was looking at his wife when the collision occurred. He did not turn into one of the other lanes of travel then open and unobstructed, which he testified he could have done. He testified that the truck appeared to him to be

moving; and that, because of that fact, he paid no attention to it notwithstanding the fact that he steadily was cutting down the distance between it and his car.

While it is a fact that the truck's motor was running, there was no evidence that the husband was aware of that fact. Likewise, there was no evidence that it gave off any visible exhaust vapors. Consequently, plaintiff made no claim that the husband was in any way misled by the fact that the motor was running or that there were any vapors from the exhaust. On the contrary, her only claim was that defendants were negligent because they violated the statutes mentioned by permitting the truck to stand on the pavement and by failing to set out flags during the day to warn travelers of the presence of the truck on the highway, and that such negligence caused the accident.

According to an estimate, 500 automobiles had passed the truck while it stood on the pavement without incident of any sort. Apparently the passing cars approached it both from the front and rear.

Defendants deny negligence, claiming that the truck was disabled to such extent that it was impossible to avoid stopping and temporarily leaving it on the highway pending the making of necessary repairs, and that leaving it there under the circumstances was authorized by § 169.32 (§ 2720-217). Plaintiff's evidence made it a fact question whether the truck was so disabled. The defendant Doolittle also claimed that he was not liable, upon the ground that the defendant Hallberg was an independent contractor, for whose negligence, if any, he was not liable. Both defendants also contended that violation of statute or negligence on their part, if any, was not a proximate cause of the collision, and that the negligence of decedent's husband was a superseding, intervening cause and the sole cause thereof. The trial court held that the husband was negligent as a matter of law, but that his negligence was not imputable to decedent, and submitted the issues of negligence and proximate cause to the jury. Implicit in the verdict are findings

that both defendants were negligent and that their negligence was the proximate cause of the collision.

On the appeal the same questions are raised. We shall consider first the question whether defendants' negligence was as a matter of law a proximate cause of the collision, because, if decision on that point is in favor of defendants, that ends the case in their favor and renders unnecessary consideration of the other questions presented.

Negligence or an act in violation of statute is not actionable unless it was the proximate cause of the injury charged, even though the negligent act or omission is declared by statute to be negligence *per se.* Curwen v. Appleton Mfg. Co. 133 Minn. 28, 157 N. W. 899. The rule has been applied as a matter of course in cases involving automobiles, trains, structures, and obstacles upon a highway either placed or constructed there in violation of statute. Anderson v. Johnson, 208 Minn. 373, 294 N. W. 224; Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553; Lundstrom v. Giacomo, 194 Minn. 624, 261 N. W. 465; Lind v. G. N. Ry. Co. 171 Minn. 486, 214 N. W. 763; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630. Likewise, contributory negligence is no defense unless it was the proximate cause of plaintiff's harm. Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327. Here, the parking of the truck on the highway and the failure to set out flags constituted violations of the highway traffic regulation act. The act declares a violation thereof *prima facie* evidence of negligence. Rogers v. Minneapolis St. Ry. Co. 218 Minn. 454, 16 N. W. (2d) 516.

It is asserted here that the negligence, if any, of defendants was not the proximate cause of decedent's death, because the negligence of the husband as the driver of the car in which she was riding was a superseding, intervening cause thereof which insulated defendants' negligence and thereby relieved them of liability. So far as causation is concerned, it makes very little difference here whether we speak in terms of proximate cause or substantial factor in producing the harm. Generally speaking, the proximate cause

of an injury is the act or omission which causes it directly or immediately, or through a natural sequence of events, without the intervention of another independent and efficient cause. It must be the predominant cause. Russell v. German F. Ins. Co. 100 Minn. 528, 111 N. W. 400, 10 L.R.A. (N.S.) 326; Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640. The substantial-factor rule adopted in Peterson v. Fulton, 192 Minn. 360, 256 N. W. 901, from Restatement, Torts, is paragraph (a) of § 431 thereof, to the effect that the negligence charged must be a substantial factor in bringing about the harm.

The problem here is not one simply of proximate cause or substantial factor in producing the harm, but one of superseding, intervening cause. The rules with respect to proximate cause and substantial factor producing the harm are limited by those with respect to superseding, intervening causes. Generally speaking, a superseding, intervening cause is an act of plaintiff or of a third person, in no way caused by defendant's negligence, or a force of nature, occurring *after* defendant's negligent act or omission and operating as an independent force to produce the injury. A superseding, intervening cause breaks the chain of causation set in operation by defendant's negligence, thereby insulating his negligence as a direct cause of the injury. Kayser v. Jungbauer, 217 Minn. 140, 14 N. W. (2d) 337; Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; Teis v. Smuggler Min. Co. (8 Cir.) 158 F. 260, 15 L.R.A. (N.S.) 893; 4 Dunnell, Dig. & Supp. § 7005.

Superseding, intervening causes are treated by Restatement, Torts, as limitations of liability. The substantial-factor rule of paragraph (a) of § 431 is qualified by paragraph (b) thereof, to the effect that it applies only where "there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." In subsequent sections the rules relieving the actor of liability are stated. An intervening cause is also a superseding one, relieving the actor of liability, where it consists of an "extraordinarily negligent" act. Restatement, Torts, §§ 440, 441, 447 (c). Because an actor may be relieved

under the rules laid down in numerous sections subsequent to § 431, Prosser, Torts, p. 318, says:

"* * * As applied to the fact of causation alone, the test [the substantial-factor test] is of considerable assistance, and perhaps no better guide can be found. But when the 'substantial factor' is made to include all of the ill-defined considerations of policy which go to limit liability even when causation in fact is found, it has no more definite meaning than 'proximate cause,' and it becomes a hindrance rather than a help. It is particularly unfortunate in so far as it suggests that the questions involved are only questions of causation, and obscures all other issues, and it tends to leave to the jury matters which should be decided by the court."

We think that the husband's conduct constituted an intervening, efficient, and responsible cause, breaking the chain of causation between defendants' original negligence and the collision. It operated as an independent force, because he realized the rapid approach of his car to the standing truck, and, consequently, whether the truck was in fact standing or moving slowly, as he must have thought it was doing if he thought it was moving at all, he was chargeable with knowledge of the hazard created by defendants' acts. The husband's conduct in failing to avert the collision was therefore independent of defendants' acts and broke the chain of causation. In driving the automobile at the rate of 38 miles per hour directly toward the parked truck in full realization that in the course of but a few seconds he was reducing the distance between him and the truck, first from a little over a quarter of a mile to 500 feet and then to 150 or 175 feet, in looking away from the truck toward his wife at the last-mentioned point, and in making no effort to avoid the collision then appearing imminent to him by passing the truck in one of the other lanes then open to him, the husband was guilty of extraordinary and culpable negligence. Such conduct evinced extreme, reckless, and wanton disregard of their lives. It was well-nigh suicidal as to himself and homicidal as to his wife, to whom he owed a duty of exercising

due care for her protection. In State v. Geary, 184 Minn. 387, 239 N. W. 158, we held the driver of an automobile guilty of manslaughter for causing the death of a guest passenger where the driver while drunk drove the car at excessive speed and the car left the road through his failure to control it. Of course here the driver was sober, not drunk, as the driver was in the Geary case; but that fact does not lessen his culpability, for the reason that he realized that a collision would occur unless he turned into another lane. A man who knowingly permits a collision to occur is legally as derelict as one who is unable to prevent one because his faculties are dulled by drunkenness.[2] Defendants should be relieved of liability, not because the husband's conduct might be criminal, but because it operated to cause the collision independently of the prior negligence of defendants in parking the truck on the highway. The standing truck involved no danger to about 500 other drivers who passed it. It involved danger to decedent only because of the extraordinary and culpable negligence of her husband. Under the circumstances, defendants' prior negligence was an occasion or condition, but not a proximate cause of the accident. Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

In Kline v. Moyer, 325 Pa. 357, 191 A. 43, 111 A. L. R. 406, where the driver of an automobile swerved to the left to avoid a rear-end collision with an unlighted and unguarded truck of one of the defendants parked on the highway and collided with a car coming from the opposite direction, it was held that the question whether such defendant's negligence in so parking the truck was a proximate cause of the accident was to be determined by whether the driver saw, or should have seen, the parked truck in time to avoid the accident by the exercise of due care, and, if he did, failed to do so; and that, if the driver did see the parked truck or should have done so, and then failed to exercise due care to avoid the collision, the negligence of the driver was a superseding, inter-

[2]See, State v. Cantrell, 220 Minn. 13, 18 N. W. (2d) 681; State v. Cook, 212 Minn. 495, 4 N. W. (2d) 323; State v. Puent, 198 Minn. 175, 269 N. W. 372; State v. Hines, 148 Minn. 393, 182 N. W. 450.

vening cause of the accident. It was held that the defendant as the first actor could not reasonably be expected to foresee that the driver as the second actor would fail to exercise due care for his own protection *after* acquiring knowledge of the danger. In a footnote it was pointed out that the conduct of the driver was "extraordinarily negligent" within the meaning of the rule laid down in Restatement, Torts, § 447(c). The court formulated a working rule, as follows (325 Pa. 364, 191 A. 46, 11 A. L. R. 406):

"* * * Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause. Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties."

See, Hendricks v. Pyramid M. F. Corp. 328 Pa. 570, 195 A. 907.

Courts generally have held that, where the driver of an automobile colliding with the rear end of another automobile standing on a highway saw the standing one in time to avoid the collision and might have avoided it by the exercise of reasonable care either by stopping his own car or by turning to avoid the standing one, but did not, the negligence, if any, in permitting the car to be standing on the highway is not the proximate cause of the collision, and that the driver's conduct is a superseding, intervening cause thereof. In such a case, the party parking the automobile on the highway is not liable for injury to, or the death of, a guest passenger of the driver of the automobile colliding with it. Jaggers v. Southeastern Greyhound Lines, Inc. (D. C.) 34 F. Supp. 667; Jilka v. National Mut. Cas. Co. 152 Kan. 537, 106 P. (2d) 665; Hataway v. F. Strauss & Son, Inc. (La. App.) 158 So. 408; Powers v. S. Stern-

berg & Co. 213 N. C. 41, 195 S. E. 88; Reeves v. Staley, 220 N. C. 573, 18 S. E. (2d) 239; Roanoke Ry. & Elec. Co. v. Whitner, 173 Va. 253, 3 S. E. (2d) 169; Hubbard v. Murray, 173 Va. 448, 3 S. E. (2d) 397; Annotation, 131 A. L. R. 564; Prosser, Torts, pp. 365-366, and cases cited in note 94. It makes no difference in such case whether the standing automobile was parked in violation of the statute requiring flares to be set out. Knowledge on the part of the driver of a car that an automobile is standing on the highway ahead of him apprises him of the dangers arising from the presence of the standing car and affords him the warning which it is the purpose of regulations requiring lights or the setting out of flares or flags to give. Jilka v. National Mut. Cas. Co. 152 Kan. 537, 106 P. (2d) 665; Purol, Inc. v. Great Eastern System, Inc. 130 Pa. Sup. 341, 197 A. 543. In Biehl v. Rafferty, 349 Pa. 493, 37 A. (2d) 729, the court held that the liability of the operator of a bus stalled on a pavement on a cold, dark night for the death of a passenger was to be determined by the rule stated, even though no flares had been set out as required by statute.

Nor does it make any difference that the driver under the circumstances thought that the standing car ahead was in fact moving. In Albrecht v. Waterloo Const. Co. 218 Iowa 1205, 1208, 257 N. W. 183, 184, where, as here, the driver of the car colliding with one standing on the highway claimed that the standing car appeared to be moving, the court used language applicable here, as follows:

"* * * It was light enough for him to see the truck, and he explains the accident by saying that he believed the truck was moving, but realized that it was not moving when it was 25 feet away. The stopping of the truck, without a light or signal, had nothing whatever to do with the collision. It was his duty to regulate the speed of his car in such a manner as to avoid the collision."

We have not held in any case that there is liability under a similar fact situation. Where we have held the leaving of an automobile or other object on a highway to be the proximate cause of a

collision with it by an automobile, the accident occurred at night under circumstances obscuring the view of the driver of the colliding car, such as darkness, fog, mist, rain, smoke, curves, hill, and other factors. Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553 (train standing across street in violation of statute obscured by darkness, smoke, and fog); Latourelle v. Horan, 212 Minn. 520, 4 N. W. (2d) 343 (darkness); Cowperthwait v. Tadsen, 212 Minn. 49, 2 N. W. (2d) 429 (darkness and curve in road); Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196 (darkness and confusion caused by headlights); Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484 (darkness, car parked just over brow of hill, confusion caused by street lights); Wedel v. Johnson, 196 Minn. 170, 264 N. W. 689 (dead horse left on road, not clearly visible in darkness). Our other cases involve similar fact situations. The case of Geisen v. Luce, *supra,* in principle sustains the view that there is no liability here and is sometimes cited to that effect. There, an automobile stalled on a highway was held not to be the proximate cause of the driver of another car, passing on its left, going into a ditch in order to avoid a head-on collision with a car approaching from the opposite direction. We there said (185 Minn. 485, 242 N. W. 11):

"* * * Its presence was known to all; it created no surprise; it did not obstruct a view of the traffic.

*    *    *    *    *

"* * * While such standing may be the occasion or condition, it is not in a legal sense a contributing proximate cause of the accident."

Fleenor v. Rowley, 198 Minn. 163, 269 N. W. 370, is distinguishable, because there the car ahead had been moving and then stopped on the pavement, thereby misleading the driver of the one behind. Such a stop was clearly a proximate cause of the collision (see, Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. [2d] 406, 147 A. L. R. 945). Furthermore, there the driver of the car behind neither saw that the one ahead had stopped nor had

any opportunity, as here, to avoid the accident by turning into another lane or onto the shoulder. Here, of course, the husband plainly saw the truck directly ahead of him, knew he was about to collide with it, and had an opportunity to avoid the collision by turning into another lane and passing it, but did not do so.

The instant case is to be distinguished from those like Walker v. Stecher, 219 Minn. 152, 17 N. W. (2d) 317; Johnson v. Sunshine Creamery Co. 200 Minn. 428, 274 N. W. 404; Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849, and similar cases, where the negligent acts of the first and all subsequent actors were held to be proximate causes of plaintiff's injury, upon the theory that the first actor by his negligence started a chain of events to which the others contributed in the happening of the harm. The difference between the so-called chain-of-events cases and the instant one is that in the former the second actor (and this applies to all subsequent actors) through his own negligence failed to see the standing automobile in time to get his car under control and avert the accident, or else failed to see it at all, and thus became committed to a situation which made the accident inevitable; while in cases like the instant one the second actor saw the standing automobile in time to avoid a collision and could have done so by the exercise of reasonable care, but did not do so. In Kline v. Moyer, *supra,* the court said of the former class of cases (325 Pa. 363, 191 A. 46, 111 A. L. R. 406):

"* * * If already at that time, by the negligence of its driver, the moving vehicle is in such a position and under such impetus that an accident cannot be avoided, the negligence of the truck owner is as much a proximate cause of the accident as is the negligence of the driver of the car; the negligence of each has contributed to the result."

And of the latter (325 Pa. 363, 191 A. 46, 111 A. L. R. 406):

"* * * But if, after seeing the unlighted truck, although he would still have been able to guide his car without accident, the driver proceeds in such negligent manner that an accident results,

the original negligence of the truck owner has become a non-causal factor divested of legal significance; as to it the chain of causation is broken, and responsibility remains solely with the operator of the moving car."

In the latter class of cases the court also said (325 Pa. 363, 191 A. 46, 111 A. L. R. 406):

"* * * It is clear that when an unlighted, parked truck is seen by the operator of an approaching vehicle, the fact of its being unlighted becomes *thereafter* of legal inconsequence, because the purpose of a light as warning has been otherwise accomplished."

It was upon the basis of these distinctions that the Pennsylvania court in Kline v. Moyer formulated the rule quoted *supra*. We think that the distinctions are sound. Defendants here should not be held liable because the subsequent, independent negligence of the husband directly and proximately caused the accident.

Our conclusion is that the husband's negligence was a superseding, intervening cause of decedent's death and that defendants are not liable. For that reason, defendants are entitled to judgment.

Reversed with directions to enter judgment in favor of defendants.