# Richmond

## HERBERT E. DUGROO v. JOSEPH L. GARRETT.

December 3, 1962.

Record No. 5479.

Present, All the Justices.

*E. Pryor Wormington* (*Rixey & Rixey,* on brief), for the plaintiff in error.

*Herbert K. Bangel* (*Bangel, Bangel & Bangel,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

■ Joseph L. Garrett, herein called plaintiff, instituted an action against Herbert E. Dugroo, herein called defendant, seeking to recover damages for personal injuries allegedly suffered by plaintiff as a result of an automobile collision. The jury returned a verdict for plaintiff in the sum of $2,500. Defendant moved to set aside the verdict and award him a new trial on the grounds that the court erred in granting certain instructions. The motion was overruled, judgment was entered on the verdict and defendant duly excepted.

The collision occurred on the morning of January 16, 1961, at the intersection of Ballinger boulevard and Fourth street, within the limits of U. S. Naval Air Station, at Norfolk. Ballinger boulevard runs east and west. In the center of it were double solid white lines, which separated the eastbound and westbound traffic lanes. There were two lanes of traffic in each direction divided by a broken white line. Fourth street runs generally north and south but does not intersect Ballinger boulevard at exact right angles. It is not as wide as Ballinger boulevard and there was a single solid white line in the center of the street which divided the northbound lane from the southbound lane. At the intersection there was a standard traffic light which controlled traffic in all directions. There were no obstructions affecting the intersection. At the time of the accident, the speed limit was 30 miles per hour and it was raining.

The plaintiff was driving an automobile east on Ballinger boulevard and planned to make a left turn to go north on Fourth street. Defendant was operating a car west on Ballinger boulevard and his intention was to continue west through the Fourth street intersection. As plaintiff approached the intersection in the left or inside lane he turned on his signal device indicating his intention to make a left turn. The traffic light changed to red and he stopped his vehicle at the intersection with his left turn signal light flashing. There were no cars in front of him in the inside lane. When the light changed to green an unidentified automobile approached the intersection in the inside westbound lane of Ballinger boulevard and stopped. Its signal light was flashing for a left turn into Fourth street. The unidentified driver motioned with his hand for plaintiff to proceed with his left turn. Plaintiff "pulled up across in front of this car and stopped" so that several vehicles proceeding in the outside westbound lane of Ballinger boulevard could clear the intersection. When these cars had passed, plaintiff proceeded to cross the intersection and as he was

leaving it the right front of defendant's car struck the right rear of plaintiff's vehicle in the outside westbound lane. Defendant had been in the inside westbound lane following the unidentified car, but when it signaled for a left turn and stopped, defendant, who was traveling about 25 miles per hour, drove his automobile into the outside westbound lane in order to pass.

It is not disputed that the traffic light was green for both litigants; that plaintiff gave a proper signal for the left turn, and that defendant gave no signal when he drove his vehicle from the inside lane into the outside lane.

In his assignments of error, defendant challenges the correctness of the court's rulings in granting Instructions P-1 and P-2, and in refusing to set aside the verdict and award a new trial because of the alleged error in granting these instructions.

Instruction P-1 reads:

"The Court instructs the jury that the law requires every driver who intends to turn or partly turn from a direct line to comply with the following provisions of the statute:

"1. To give a signal clearly visible to traffic that may be affected thereby of his intention to turn or partly turn continuously for a distance of at least 50 feet before turning or partly turning, or materially altering the course of his vehicle.

"2. To use reasonable and ordinary care under all of the circumstances then and there existing to see that such movement can be made in safety.

"And if you believe from the evidence that the defendant failed in either of the above particulars, and that such failure was the sole proximate cause of the accident, then you should find a verdict for the plaintiff against the defendant."

Defendant does not question the correctness of the form of Instruction P-1. He insists, however, that there was prejudicial error in granting it, because there was no evidence, as a matter of law, that the failure to give a signal had any causal relationship with the accident. Plaintiff contends the evidence presented a jury question.

Even though the failure to give a required statutory signal is negligence, such failure must be the proximate cause of the injury in order to allow recovery. *Morris* v. *Dame's Ex'r*, 161 Va. 545, 566, 171 S. E. 662. The failure to perform a duty establishes the proximate cause of an injury only where the doing of the omitted act would have prevented the injury. *Cozart* v. *Hudson*, 239 N. C. 279, 284, 78 S. E. 2d 881; 38 Am. Jur., Negligence, § 54, p. 701.

According to plaintiff, he had commenced his left turn into Fourth street and stopped at a point opposite the unindentified car, which was in the inside westbound lane of Ballinger boulevard, to permit traffic in the outside westbound lane to pass. At this time he noticed defendant's car for the first time approaching behind the unidentified car in the inside lane. He said that defendant's automobile was about three or four car lengths from his vehicle. He stated that his car was approximately 16 feet long. He saw defendant's automobile through the windows of the unidentified car when it was raining. When he started forward he observed defendant's car change from the inside lane to the westbound lane and was struck by it just as his car was leaving the intersection. He further testified that when he noticed defendant's vehicle change lanes he did not think that defendant's automobile would strike his vehicle or that there was any "hazard" created at the time. He said "I was surprised when I was hit."

If no hazard was presented in plaintiff's mind by the actual change, then a mere signal of an intent to change lanes would not have put plaintiff on notice that a hazard would be created by the subsequent change. Plaintiff did not testify that he saw defendant's vehicle from the time it was three or four car lengths from him until it was changing its course. Had defendant given a signal during this interval, plaintiff would not have seen it. A signal would not have told plaintiff more than he already knew. The purpose of a signal is to give notice of the driver's intention to turn. If the complaining motorist has due notice otherwise, then the purpose of the signal has been served. *Wilson* v. *Camp*, 249 N. C. 754, 107 S. E. 2d 743. The accident did not happen while defendant was changing lanes or altering his course. It occurred after he had completed the movement and had entered the intersection. The accident involved presented a question of proper lookout which was covered by another instruction.

From a consideration of the entire record, we reach the conclusion that the evidence does not show that defendant's failure to give the signal had any causal connection with the accident, and thus it was error to give Instruction P-1.

██ Instruction P-2 states:

"The Court instructs the jury that the law provides that any person driving a vehicle on a highway shall drive the same at a lawful speed, not greater than is reasonable and proper, having due regard for the traffic, surface and width of the highway and of any other condition then existing. Therefore, if you believe from a preponderance of the evidence that the defendant failed to observe this law, then this

is negligence, and if you further believe that this negligence if any was the sole proximate cause of the accident, you should find a verdict for the plaintiff."

Defendant objected and excepted to this instruction on the ground that there was no evidence that he was not operating his vehicle "at a lawful speed, or at a speed any greater than that which was reasonably proper under the circumstances of the accident."

Defendant correctly points out that the undisputed evidence was that he was not traveling in excess of 25 miles per hour in a 30 mile zone. He argues that negligence by reason of speed falls into two classes; "improper and excessive speed" and "unlawful speed". The former, he says, applies where the circumstances and conditions existing at the time may make one guilty of negligence even though he may be operating the vehicle under the stated speed limit law. The latter class, he contends, has reference to speed limit laws, and that it was error for the instruction to contain the phrase "shall drive the same at a lawful speed", because there was no evidence that he exceeded the lawful speed limit of 30 miles per hour. Thus, he says the instruction was misleading and not applicable to the facts in this case.

No doubt the instruction was intended to be predicated on § 46.1-190(h), which provides that an operator shall be guilty of reckless driving who shall "Exceed a reasonable speed under the circumstances and traffic conditions existing at the time regardless of any posted speed limit;". If such an instruction is offered upon a retrial of the case, assuming the evidence relating to defendant's speed is the same, it should be amended to clarify its intent.

For the reasons stated, the judgment appealed from is reversed and the case remanded for a new trial on all issues.

*Reversed and remanded.*