## DAGNY KELLERMAN AND ANOTHER v. ALDEN NELSON AND OTHERS.

122 N. W. (2d) 604.

June 14, 1963—No. 38,599.

*Carl E. Erickson,* for appellants.
*Joseph W. Ryan,* for plaintiff respondents.

SHERAN, JUSTICE.

The appeal is from a judgment entered against appellants and others in an action for personal injuries.

The facts essential to an understanding of the issues raised on appeal are these: On August 29, 1959, at approximately 6 p. m. Ruth J. Kellerman, a minor who was bicycling in an easterly direction on Trunk Highway No. 210 about 5 miles west of Aitkin, Minnesota, was struck and seriously injured by an automobile being driven in a westerly direction on this highway by Katherine M. Beal, 17, with the permission and consent of the owner, Phyllis Beal. Miss Beal had turned into the south lane of the 20-foot pavement to pass or avoid an automobile, also westbound, operated by Alden Nelson, 18, with the permission and consent of Sadie Nelson, the registered owner. The place

of the accident is identified as being 1,181 feet west of the Aitkin-Crow Wing county line on Highway No. 210. Weather conditions were normal. A firm shoulder approximately 10 feet in width was situated on each side of the concrete slab. The highway was relatively straight and level, although there was a slight grade ascending from the accident site easterly. One witness testified: "[I]t is about three-tenths of a mile back [east] from the scene of the accident to where you would get clear visibility." Action was instituted in behalf of the injured minor, Ruth Kellerman, and by her widowed mother, Dagny Kellerman, against the owners and operators of the vehicles involved on the theory that the accident resulted from the concurrent negligence of both drivers. By answer, the owner and driver of each of the vehicles contended that the accident was caused by the negligence of the other automobile operator and the contributory negligence of, and the risks assumed by, plaintiff Ruth Kellerman. By cross-claims each owner and driver sought indemnity or contribution from the other owner and driver in the event of liability to plaintiffs.

The matter was tried before a jury, which returned a verdict against all defendants in favor of plaintiff Ruth Kellerman in the amount of $45,000 and in favor of plaintiff Dagny Kellerman in the amount of $12,000. The motion of defendants Nelson for judgment notwithstanding the verdict or for a new trial was denied and they appeal from the judgment entered thereafter. The issues they raise here are these:

(1) Does the evidence reasonably sustain the jury's finding that negligence on the part of Alden Nelson was a proximate cause of the injury and damage sustained by Ruth Kellerman?

(2) Does the evidence permit or require a finding, implicit in the verdict of the jury, that contributory negligence on the part of Ruth Kellerman was not a proximate cause of the accident?

(3) Did the trial court err in failing to instruct the jury with respect to Minn. St. 169.21, subd. 3?

(4) Did the trial court err in submitting to the jury the "sudden emergency rule" for consideration in connection with the claimed negligence of defendant Katherine Beal and plaintiff Ruth Kellerman?

(5)   Did the trial court err in its instructions concerning proximate cause?

■   In support of the argument that the evidence shows, as a matter of law, that the negligence, if any, of Alden Nelson was not a proximate cause of the collision here involved, defendants Nelson rely principally on Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788. In the Medved case the driver of an automobile in broad daylight, seeing a truck ahead of him on the highway in his lane of travel when he was a little over a quarter of a mile distant from it, proceeded directly toward it, realizing that he was rapidly cutting down the distance between his car and the truck, first to 500 feet and then to 150 or 175 feet, and that he could have avoided a collision by either stopping or passing the truck by turning into another lane of travel then open and unobstructed, and did not do so, but turned sideways to look at a guest passenger when he was 150 or 175 feet from the truck and was so looking when the collision occurred. We held that the negligence of the truckdriver, if any, in permitting the truck to stand on the highway in violation of a section of the Highway Traffic Regulation Act prohibiting such parking, and in his violation of the provision of the act requiring flags to be set out in such cases, was not the proximate cause of the collision and that the conduct of the automobile driver was so culpable and extraordinarily negligent as to constitute a superseding, intervening cause of the collision, insulating any prior negligence in so parking the truck. In arriving at its decision this court said (220 Minn. 357, 19 N. W. [2d] 791): "An intervening cause is also a superseding one, relieving the actor of liability, where it consists of an 'extraordinarily negligent' act." The court described the conduct of the automobile driver who was aware of the presence of the truck and nevertheless drove directly into the rear end of it without making any effort to move into one of the other lanes then open to him as (220 Minn. 358, 19 N. W. [2d] 721) "well-nigh suicidal as to himself and homicidal as to his wife." Such conduct would not be reasonably foreseeable.

Whether the facts of this case make the rule of the Medved case applicable must be determined by an examination of the record in the light most favorable to the plaintiffs who were the prevailing parties below.

So considered, we find in the record the following testimony which distinguishes this case from the Medved case and places us in agreement with the trial court's decision that the evidence made the question of whether defendant Nelson's negligence was a proximate cause of the injury one for determination by the jury:

When struck by the Beal car, Ruth Kellerman was riding her bicycle along the south edge of the pavement and traveling in an easterly direction toward Aitkin. She was about 75 to 100 feet to the rear of her cycling companion, Kathy Peterson. Ruth saw a car (the Nelson vehicle) coming from the opposite direction. It reduced speed and stopped in the north lane when Kathy was about 5 feet from it. As Ruth was approaching the car, it "kept getting slower and then stopped." No part of the Nelson car was on the shoulder. Ruth testified that Kathy Peterson pedaled past the Nelson car and "I kept going and trying to pass as fast as I could." She testified that the occupants of the Nelson car "were hollering something, but I don't know what they said."

Katherine Beal testified that she had left Aitkin about 6 p. m., accompanied by her girl friend, Pat Howard, and her cousin, Gary Beal, and driving her aunt's 1957 Ford automobile. She was 17 at the time. Her cousin was 4 years of age and in the back seat. Her friend was in the front seat with her. As Katherine approached the accident site from the east, her visibility was relatively unobstructed. She observed the Nelson car when she was about 600 feet west of it. She had been driving 50 to 55 miles per hour. As she came closer to the Nelson car, it appeared to be stopped. She was about a block, or 300 feet, from it when she came to that conclusion. It was on the north half of the pavement directly in front of her and was facing west. She put her brakes on "real hard" 150 feet east of the Nelson car but, nevertheless, it appeared that she was going to run into the back end of it. To avoid the Nelson car she then swung to the left to cross the centerline and when she did so came into contact with Ruth, whom she had previously observed riding east on the south edge of the pavement. So far as she observed, the Kellerman girl did not change her course of travel before the impact. The injured girl appeared to be directly south of the Nelson car when the impact occurred.

Alden Nelson testified that he was 18 years of age at the time of the accident and was the owner of a 1939 automobile which he was then operating and which was registered in the name of his grandmother. A resident of Ironton, he had been employed at Brainerd, but had been laid off the day before the accident. On the day of the accident, accompanied by a friend of the same age, Paul Radinovich, he drove to Aitkin "to kill time." They remained in Aitkin from about 3 p. m. until about 6 p. m. and then left for home. Proceeding in a westerly direction on Highway No. 210, Nelson observed the two girls on their bicycles when he was a considerable distance to the east of them. They were on the south side of the highway and continued at all times in that position without change of course. He testified at the time of the trial that he gradually reduced his speed as he approached the girls and that he came abreast of Kathy Peterson when he was traveling at a speed of about 20 or 25 miles per hour. He conceded at the trial that when Ruth came alongside his car, his speed might have been as low as 15 miles per hour. He gave no signal of intention to stop. As Ruth came abreast of and "pedaled on past" him, he heard a tire skidding on the road. He then observed in his rearview mirror the front end of a 1957 Ford which looked as if it was going out of control. The left front fender seemed to start wobbling and started across the centerline. He then started to speed up a little, according to his testimony at the trial, and when he turned and looked again the collision between the Beal car and the Kellerman girl had occurred. He did not see the actual impact.

On August 30, 1959, Nelson gave a written statement to highway patrolman John L. Hogan in which he said that at the time of the accident he was returning home from Aitkin and that as he was driving westerly he saw the two girls on bicycles and "slowed down to look [them] over."

Officer Hogan testified with respect to the explanation given by Nelson shortly after the accident:

"He stated they had been at Aitkin and were heading home and he said he saw the two girls on bicycles and wearing shorts, and he said that they slowed down to look them over. He said after all it was only human nature that young fellows would stop to look at the girls in shorts

riding a bicycle, and they started up when they heard the other car coming behind them. I asked what they had been doing in Aitkin, and he told me they had been in Aitkin trying to pick up some girl friends, and he said they had not had much luck, and I said supper time was a poor time to pick up anybody, anyway."

Kathy Peterson described the movement of the Nelson car as follows:

"Q. How did that car act as to speed and the course it took as it was coming toward you?

"A. It slowed down. It was going a normal speed and slowed down to a gradual stop.

"Q. Did it stop?

"A. Yes.

"Q. Where on the pavement was the car when it stopped?

"A. On the north lane."

After she passed the Nelson car she observed the Beal car. It passed her and she then heard brakes and "turned around and saw the Beal car pull out and hit Ruth."

Patricia Howard Nubbe, who was with Katherine Beal at the time of the accident, testified that immediately before the accident occurred she was talking to Gary Beal, who was in the back seat, and that her attention was directed to the impending accident by the application of brakes in the Beal car. She looked up and observed the Nelson vehicle, which appeared to her to be stopped on the highway.

The testimony of these witnesses to the effect that Nelson stopped—or almost stopped—in the north lane of travel is fully corroborated by Clifford E. Johnson who was following the Beal car and saw it pull into the south lane in an effort to avoid the stopped or slowly moving Nelson car.

In view of the foregoing evidence it is our opinion that the cases cited by defendants Nelson do not support their claim that they are entitled to judgment notwithstanding the verdict. Nelson's action in reducing the speed of his car from approximately 55 miles per hour to a speed which according to his testimony was 15 miles per hour and which—according to believable evidence—was either slower than that, or possibly had

brought him to a complete stop, created a situation in which it was surely foreseeable that a car coming from the rear would pull into the south lane of travel in an effort to pass or avoid striking his rear. The driver of the Beal car did not, as did the driver in the Medved case, proceed directly into the rear end of the parked vehicle without attempting to avoid it. In this case the driver of the overtaking car did attempt to avoid the car ahead and it was in this attempt that the accident occurred. "Intervening cause" has no application to a case such as that presented here when the possible inferences are resolved in favor of the verdict.[1]

■ We can see no basis for a finding of contributory negligence on the part of the plaintiff bicycle rider. The only thing that she did was to ride her bicycle on the highway near the southerly edge of it, and all of the witnesses agree that there was no change in her method of operating the bicycle immediately before the collision that could in any way have accounted for its occurrence. By the terms of § 169.221,[2] she was entitled to proceed on the highway as she did.

■ Failure to read § 169.21 does not constitute reversible error. The purpose of this section of the statute is to impose upon drivers a duty to avoid injury to "any child or any confused or incapacitated person upon a roadway." § 169.21, subd. 3. The clear implication of the statute is that the drivers of motor vehicles are required to exercise particular care when they observe persons on the highway who appear to be unable to exercise due care in their own behalf. Such was not the situation here. The injured plaintiff and her companion were riding their bicycles in an entirely proper manner upon the highway. A new trial of

---

[1]Fleenor v. Rowley, 198 Minn. 163, 269 N. W. 370; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450; Northern Liquid Gas Co. v. Hildreth (8 Cir.) 180 F. (2d) 330.

[2]Minn. St. 169.221, subd. 1. "Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter, except as to special regulations in this chapter and except as to those provisions of this chapter which by their nature can have no application."

the case because of failure to give the requested instruction would not be justified. See, Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605.

■ The instruction given by the trial court with respect to the emergency rule could not have caused prejudice to defendants Nelson, in so far as this rule applied to the codefendants Beal, whose negligence was found to have been a proximate cause of the occurrence. Ruth Kellerman was faced with an emergency when the Beal car left the north lane of travel and proceeded in a southwesterly direction toward her as she was proceeding properly along the highway. Apart from this, we find it difficult to see any basis on which the jury could have found contributory negligence on the part of the plaintiff bicycle rider in this case.

■ No exception was taken to the instructions on proximate and concurring cause, which were adequate in any event.

■ Although not specifically raised in the statement of issues set forth in defendant Nelsons' brief, they argue that the verdict against them was the result of passion and prejudice. However it is not asserted that the size of the verdict is out of proportion to the injuries sustained. It appears that the prejudice to which they refer is a claimed bias on the part of Officer Hogan in favor of plaintiffs Kellerman and the codefendants Beal. It is also pointed out that the witness Johnson was favorably disposed to the parties other than Nelson. These were matters properly to be considered by the jury, but we do not feel that such considerations have bearing on the issues presented for our consideration in determining whether judgment notwithstanding the verdict or a new trial should be granted. The judgment is affirmed.

Affirmed.