MARGARET BARCLAY AND ANOTHER v. BARBARA O'DELL AND OTHERS.

123 N. W. (2d) 681.

October 4, 1963—No. 38,896.

---

*Cragg, Barnett & Austin* and *David A. Bailly,* for appellants.
*Philip F. Shields,* for respondents Barclay.

OTIS, JUSTICE.

The plaintiff, Margaret Barclay, while riding as a passenger in a car owned by defendant Kenneth O'Dell and operated by her daughter, defendant Barbara O'Dell, was injured in a rear-end collision with defendant Harvey Lutgen. The jury awarded plaintiffs damages against all defendants. From an order denying their motions for judgment n. o. v. or a new trial the O'Dells appeal.

The accident happened on Saturday, September 26, 1959, between 3 and 3:30 in the afternoon, when Mrs. O'Dell was returning from shopping with her mother in the village of Crystal. After turning south on U. S. No. 52 from Bass Lake Road, she observed two boys on bicycles crossing the highway from the east. She was then some 40 feet north of

the center island and traveling 35 or 40 miles an hour. South of the Wilshire intersection No. 52 is a 4-lane highway divided by a concrete curbing which is 4 feet wide for a distance of 40 feet and narrows to 6 inches in width and approximately 6 inches in height beyond that point. As Mrs. O'Dell crossed Wilshire, the younger child headed his bicycle south on the center island toward the narrow curb and the older child called to him to come back. Thereupon Mrs. O'Dell slackened her speed to 20 miles an hour. As she drew alongside the younger boy he was riding his bike on the 6-inch curbing. This prompted Mrs. O'Dell to reduce her speed to 10 or 15 miles an hour in an effort to get behind him. She was then about 70 feet from the intersection and she testified that the boy was traveling 120 or 130 feet ahead of her on the strip. As she anticipated, he fell from the curb and landed with his head directly in her line of travel. Without looking in her rearview mirror or giving a hand-and-arm signal, she came to a stop and was struck from behind by Lutgen, causing injury to Mrs. Barclay who was riding as a passenger in her front seat.

Mrs. Barclay testified that her daughter was driving very slowly and stopped the car without any jolting or screeching of brakes, exclaiming as she did so, "We didn't hit him, Mother." She was of the opinion that the boy fell into the highway some 400 feet south of the island when he was approximately 12 feet ahead of the car, which was then traveling about 10 miles an hour. She, too, anticipated that the boy would fall and gave her daughter an explicit warning to that effect.

The defendant Lutgen first saw Mrs. O'Dell ahead of him when he was halfway between Bass Lake Road and Wilshire Boulevard. Both he and Mrs. O'Dell were in the lane next to the island. Because traffic was heavy he found it difficult to turn out to pass her on the right. He saw the boys on their bikes as he reached Wilshire Boulevard. At first he was about 4 or 5 car lengths behind Mrs. O'Dell and traveling 25 miles an hour. He testified that as Mrs. O'Dell slowed, the gap between his car and hers narrowed to 2 or 3 car lengths and he reduced his speed to 20 miles an hour. He watched Mrs. O'Dell pass the boy on the bike and then saw her fall back to permit him to get ahead of her. In the course of these changes in speed he reduced his speed to 10 or 15 miles an hour

and was about 1 car length behind Mrs. O'Dell when she stopped. Lutgen stated he was surprised when the younger boy drove onto the narrow strip, and thereafter assumed he would either fall, stop, or get off his bike. He said he was aware that the child was in grave danger of falling in front of the O'Dell car and that Mrs. O'Dell would either have to stop, go around him, or run over him. Lutgen's attention was directed to anticipating the fall which he finally witnessed. He described the incident as follows:

"Well, if I can recall, one of the wheels of the bike slipped off this center island and started to slip away from the boy, and he tried to put his foot down on the center island to brace himself or to slow the fall down. It didn't work and he slipped and the bike fell almost on top of him."

He estimated that the boy had ridden 75 or 80 feet along the 6-inch strip before the accident.

Although it is the contention of Lutgen that the collision occurred because of Mrs. O'Dell's failure to signal her intention to stop, he stated that he was so preoccupied with the prospect of the boy's falling that he didn't divert his attention long enough to pull around the O'Dell car to the right. Specifically, he testified as follows:

"Q. You knew that when and if this boy fell that the O'Dell car would have to stop or else run over the boy, didn't you?

"A. Yes.

"Q. So when you saw the boy fall, you knew the O'Dell car was going to stop—

"A. Right.

"Q. —didn't you? So when the car actually did stop, it was no surprise to you, was it?

"A. It was a surprise that it stopped the way it did, without no —without any warning.

"Q. Well, you already had a warning, didn't you? You saw the boy fall.

"A. I didn't have any warning by stop lights or signal.

"Q. But you had a warning by the fact the boy fell, didn't you?

"A. By seeing the boy fall, yes.

"Q. And by the fact you knew when the boy fell the car would have to stop.

"A. Or go around the boy."

Because defendant Lutgen testified he saw no brake light on the O'Dell car, we must assume no signal of intention to reduce speed or stop was given by Mrs. O'Dell.[1]

■ Urging that it was negligence for Mrs. O'Dell to stop without looking in her rearview mirror to determine whether she could do so with safety, the plaintiff relies on Kuether v. Locke, 261 Minn. 41, 110 N. W. (2d) 539.[2] In that case we held it was a jury question whether or not the driver was negligent in failing to determine what effect a sudden stop would have on other traffic where the driver had a choice between abruptly stopping or striking a dog. Unfortunately, in the instant case Mrs. O'Dell had no such alternative. The logical inference from plaintiff's argument is that Mrs. O'Dell could choose between being struck from behind or running over a helpless child. We have no hesitation in holding that under such circumstances she had an absolute obligation to bring her car to a stop regardless of what might have been disclosed by a glance in her rearview mirror. Her failure to look was therefore not a proximate cause of the collision.

■ Respondent contends that the jury was justified in finding Mrs. O'Dell negligent because she was driving at a slow rate of speed on a heavily traveled thoroughfare which was zoned for relatively fast traffic.

Our law confers the same rights and obligations on bicyclists as on other persons using the highway.[3] As we construe the statute, however, the exceptions to which it refers include children in the predicament confronting Mrs. O'Dell prior to this accident. Minn. St. 169.21, subd.

---

[1]Landeen v. DeJung, 219 Minn. 287, 290, 17 N. W. (2d) 648, 650.

[2]See, also, Martinco v. Hastings, 265 Minn. 490, 122 N. W. (2d) 631.

[3]Minn. St. 169.221, subd. 1, provides: "Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter, except as to special regulations in this chapter and except as to those provisions of this chapter which by their nature can have no application."

3, imposes on drivers a duty to "exercise proper precaution upon observing any child or any confused on incapacitated person upon a roadway." The statute is merely a codification of the common law. It is the general rule everywhere that upon seeing a child on a bicycle a motorist has a duty to reduce his speed to a minimum and to maintain a proper lookout.[4] We have held in a number of cases that the presence in the street of a child calls for greater caution than that which applies to adults.

"* * * Any careful driver will always regard the presence of a child in the street as a red light ahead. We all know the frailties of childhood and youth. They may be moved by impulse, sudden change of mind, or act pursuant to a peculiar plan or design wholly unexpected by others. They are innocent, sometimes bent on innocent mischief, free from care, and at times unconscious of impending dangers."[5]

We stated in Weasler v. Murphy Transfer & Storage Co. 167 Minn. 211, 213, 208 N. W. 657, 658:

"If there is one cause which, more than any other, should lead to the exercise of a high degree of care by an automobile driver, it is the presence of children in such a situation that any combination of action on their part and his can result in injury to them. Every automobilist should know that and if one does not govern himself accordingly, he cannot complain if a jury finds him guilty of negligence. * * * Ordinary prudence requires a high degree of care with respect to children in a position which is or may become dangerous. Particularly is that true if they are engaged in play or other occupation which so far absorbs their attention that they are oblivious to approaching danger."

Applied to facts similar to those in the instant case, we have said that where a motorist is about to overtake and pass a boy "zigzagging" on his bicycle ordinary care demands that a greater distance be maintained than with respect to other vehicles.[6]

---

[4] 2A Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 1502, p. 424.

[5] Olesen v. Noren, 161 Minn. 113, 115, 201 N. W. 296.

[6] McCormick v. Johnson Pure Milk Co. 179 Minn. 578, 580, 229 N. W.

It is difficult to conceive of a situation fraught with greater hazard than that which Mrs. O'Dell came upon. Her fear was that the child would fall into the path of northbound traffic where she would be unable to protect him. She, as well as her mother and defendant Lutgen, accurately predicted exactly what occurred. As a result of her foresight and caution in trailing the boy at a speed which would permit her to run interference for him, she very likely saved his life. Under the circumstances we hold that she was free from negligence as a matter of law in traveling at a greatly reduced speed immediately prior to this accident.

■ A more difficult question is whether or not a jury could find that Mrs. O'Dell's failure to signal her intention to stop, either by a brake light or manually, was a proximate cause of plaintiff's injury. The applicable statute is Minn. St. 169.19, subds. 6 and 7:

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so.

"The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device * * *."

It is not necessary to reiterate the rules governing the reciprocal rights and obligations of vehicles which precede and follow one another.[7] The principles which here govern have only to do with proximate cause. If the defendant Lutgen was already aware of the dangers to which a signal would have alerted him, Mrs. O'Dell's failure to comply with the statute had no bearing on the collision.[8] Obviously the only purpose

---

881, 882. See, also, Annotation, 172 A. L. R. 736; 8 Am. Jur. (2d) Automobiles and Highway Traffic, § 549; Kellerman v. Nelson, 265 Minn. 525, 122 N. W. (2d) 604.

[7]Ryan v. Griffin, 241 Minn. 91, 94, 62 N. W. (2d) 504, 507; Kuether v. Locke, 261 Minn. 41, 47, 110 N. W. (2d) 539, 544.

[8]The rule is stated thus in Annotation, 29 A. L. R. (2d) 78: "So also, if the evidence indicates that despite the failure of the stopping driver to signal his intention, the following driver was possessed of all the information which the signal would have conveyed, it has been held that the absence of the signal could not be regarded as a proximate cause of the collision."

of a signal is to give a warning.[9] We have held in a variety of situations that such warning may be transmitted effectively by means other than those prescribed by statute.[10] In a number of cases the failure to observe the statutory directions to furnish lights on parked vehicles or to set out flares has been held not to be a proximate cause of an accident where the vehicles were otherwise plainly visible.[11] Other jurisdictions have applied the same rule.[12]

Only in the clearest cases does the question of proximate cause become one of law. Except where the facts are undisputed and susceptible of only one inference and reasonable minds may not differ, the issue is for the jury.[13]

However, we hold that the uncontroverted testimony here requires a finding that Mrs. O'Dell's violation of the statute was not a proximate cause of the collision with defendant Lutgen. By his own admission, Lutgen saw the boys on the bikes just as he got to Wilshire Boulevard. From that point until the time of the collision he was fully aware of the presence of Mrs. O'Dell and the problem she was attempting to cope with. He knew she was slowing down in order to keep behind the bicycle, and he reduced his own speed accordingly. He concentrated on the maneuvers of the bicycle and the car ahead because the heavy traffic which he assumed was traveling to his right prevented his passing Mrs. O'Dell. He stated unequivocally that he was surprised at the boy's continuing on the narrow strip and realized the grave danger involved.

---

[9]Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 401, 10 N. W. (2d) 406, 411, 147 A. L. R. 945.

[10]Howard v. Marchildon, 228 Minn. 539, 547, 37 N. W. (2d) 833, 838; Turnbloom v. Crichton, 189 Minn. 588, 590, 250 N. W. 570, 571.

[11]Barrett v. Nash Finch Co. 228 Minn. 156, 161, 36 N. W. (2d) 526, 529; Medved v. Doolittle, 220 Minn. 352, 360, 19 N. W. (2d) 788, 792.

[12]Curtiss v. Fahle, 157 Kan. 226, 139 P. (2d) 827; Dugroo v. Garrett, 203 Va. 918, 128 S. E. (2d) 303; MacNeill v. Makos, 366 Pa. 465, 77 A. (2d) 378.

[13]Tandeski v. Barnard, 265 Minn. 339, 346, 121 N. W. (2d) 708, 712. See, also, Martinco v. Hastings, 265 Minn. 490, 500, 122 N. W. (2d) 631, 639; Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 434, 70 N. W. (2d) 358, 363; Ryan v. Griffin, 241 Minn. 91, 94, 62 N. W. (2d) 504, 507.

It was apparent that if the child fell in front of Mrs. O'Dell, she would either have to stop or run over him. Finally, Lutgen observed in minute detail the very incident he had anticipated.

It therefore flies in the face of reason to accept his conclusion that Mrs. O'Dell's stop was unexpected because of her failure to signal. Such a contention simply suggests that in the absence of a signal, after seeing the boy fall in her path, Lutgen had a right to assume Mrs. O'Dell would ignore the child's plight and that both cars could proceed ahead as if nothing had happened.

We believe the rule should be that where a motorist clearly observes an emergency developing which will lead to catastrophe unless the car ahead stops, the failure of the first car to signal is not a proximate cause of the damage which results from an ensuing rear-end collision. It was therefore error to deny appellants' motion for judgment notwithstanding the verdict.

Reversed.