SHIRLEY CAHILL AND ANOTHER v.
PAUL PETERSON AND ANOTHER.
INDIANHEAD TRUCK LINES, INC., APPELLANT.

151   N. W. (2d) 258.

May 26, 1967—No. 40,449.

*Robb, Robb & Van Eps* and *M. W. Gaughan,* for appellant.
*Leighton, Meany & Cotter,* for respondent plaintiffs.
*Allen G. Christoffersen,* for respondent defendant.

ROGOSHESKE, JUSTICE.

After trial, a jury in this motor vehicle accident case returned a special verdict finding that the concurrent negligence of both drivers of two truck transports caused a collision and resulting damages to plaintiffs. In response to post-trial motions by defendant Indianhead Truck Lines, Inc., the court upheld the jury's determination, and said defendant alone appeals.[1] The crucial question presented is whether the negligence of defendant Paul Peterson, driver of the truck which collided

---

[1] The court reduced the damages awarded to plaintiff Shirley Cahill for future pain and suffering from $18,000 to $12,000, and plaintiffs accepted the remittitur.

with the rear of plaintiff John Cahill's automobile, was as a matter of law a superseding cause of the collision, insulating the negligence of Jerome Moris, driver of the truck owned by defendant Indianhead.[2]

At about 4 o'clock in the afternoon of June 16, 1961, a milk-tanker semitrailer truck unit, owned and operated by defendant Peterson, collided with the rear of a Chevrolet automobile, owned and operated by plaintiff John Cahill, in which his wife, plaintiff Shirley Cahill, was a passenger. The collision occurred in Washington County upon State Highway No. 8 some 5 miles south of Forest Lake, at a point about midway in a 2-mile stretch of the highway that is straight and level. The highway, previously a three-lane highway, was marked for only two lanes of traffic, each about 15 to 16 feet wide. The weather conditions and visibility were good and the roadway was dry. Prior to the accident, a line of four vehicles was proceeding in a southerly direction on the highway at approximately 50 miles per hour. The lead vehicle was a Volkswagen panel truck, followed by the Cahill Chevrolet. The third vehicle was defendant Indianhead's empty 50-foot gasoline transport, driven by its employee, Moris. The fourth vehicle was the loaded milk truck, weighing approximately 12½ tons, operated by defendant Peterson.

About midway in this 2-mile stretch of highway, there is a driveway leading to a farm on the east side of the highway. At some point north of this driveway, defendant Indianhead's driver commenced to pass the Chevrolet automobile. Although the estimates of distance varied considerably during the extensive cross-examination of the three witnesses who testified concerning the accident, the jury could find that when the gas truck was about alongside Cahill's automobile, the Volkswagen, about 2 blocks ahead, signaled for a left turn into the farm driveway. The Volkswagen was then about ½ block north of the driveway. At this point, Cahill commenced to brake his vehicle to allow the truck to move ahead of him. Shortly after the Volkswagen began its signal, Cahill noticed an oncoming automobile in the truck's passing lane,

---

[2] The jury was instructed concerning the rule of superseding cause and by its verdict found the negligence of Peterson not to be a superseding cause.

which the truckdriver Moris said he at no time observed. It was about ¼ block south of the farm driveway at the time the Volkswagen was slightly north of and approaching the driveway. The Cahill and Indianhead vehicles were then less than 1½ to 2 blocks behind the Volkswagen. During this time, Moris was gradually angling his truck toward the right-hand lane and "crowding" Cahill, who was braking and moving to the right side of the highway. After the oncoming car had passed,[3] the Volkswagen made its left turn. Moris, however, continued to move his truck into the right-hand lane, cutting sharply in front of Cahill, the rear of the gas truck passing within 10 feet of the front of the Cahill vehicle. Thereupon, Cahill put his brakes on hard, and the Peterson milk truck struck the rear of the Cahill Chevrolet. All of this occurred at approximately the same time, separated only by a matter of seconds. The point of impact was a short distance north of the farm driveway and, when it occurred, the speed of the Cahill Chevrolet had been substantially reduced — perhaps almost stopped. There was no contact between the gas truck and the Cahill Chevrolet.

The jury could find as to defendant Peterson that he was following the gas truck at about a 1-block interval at a speed of about 40 to 50 miles per hour. He saw the gas truck pull out to pass the Chevrolet, get alongside, "crowd," and "cut in" in front of it. When Peterson was behind the vehicles, a distance variously estimated as between 300 and 500 feet, he observed the gas truck abreast of the Chevrolet and also saw the brake lights of the gas truck go on momentarily. He realized "there was something ahead," but he was not then aware of the Volkswagen or the oncoming vehicle. Visibility was good and his attention to the vehicles ahead was not distracted. He stated he did not notice the Chevrolet brake lights go on and that, with the speed and load of his truck — which was not equipped with air brakes—, he was aware that it would take him approximately 400 feet to stop. Although his testimony as to when he noticed the Chevrolet decrease its speed and when he applied his brakes is confusing, it could reasonably be found that he

---

[3] The oncoming vehicle, apparently because of the abnormal width of the highway, passed by the Indianhead truck safely.

applied his brakes lightly when he saw the gas truck brake lights go on and, when he was about 1 block from the Chevrolet and realized he must stop, reapplied his brakes with increasing force and reduced his speed to about 5 to 10 miles per hour at the time of impact. His truck was not damaged and the Chevrolet vehicle was pushed ahead only one car length, both vehicles coming to rest locked together upon and within the southbound lane of the highway.

The trial court denied Indianhead's motion for judgment notwithstanding the jury findings on the issues of negligence[4] and superseding cause on the ground they were "purely jury questions." With this conclusion we agree.

As the jury was instructed and as stated in Kroeger v. Lee, 270 Minn. 75, 78, 132 N. W. (2d) 727, 729:

"* * * For a cause to be superseding, the following elements must be present: (1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer."

There is evidence which would support a finding that in some aspects the negligence of each driver was in point of time operating simultaneously.[5]

There is also ample evidence to support a finding that Peterson's negligence, if intervening in a time sense, was brought about by Moris' negligence in crowding and cutting in on the Chevrolet, causing Cahill to suddenly brake or almost stop upon the highway. If such were the

---

[4] Appellant also argued on this appeal that Moris was not negligent as a matter of law. There is ample, indeed persuasive, evidence to justify a jury in finding that Moris was negligent because he commenced to pass Cahill in the face of an oncoming car and because he continued crowding into the right-hand lane in front of Cahill after the need to change lanes had passed and without checking in his mirror to see if it was safe to do so.

[5] Thelen v. Spilman, 251 Minn. 89, 86 N. W. (2d) 700, 77 A. L. R. (2d) 1315.

jury's conclusion, Peterson's negligence with respect to lookout, speed, and control could not, under the court's instructions, be found to be an independent or efficient force operating by itself.[6]

Finally, there is also evidentiary support for finding that Moris could have reasonably foreseen that, if he caused Cahill to suddenly decrease his speed or stop upon the highway, Peterson might fail to exercise due care to avoid a collision with the Chevrolet. Such intervening conduct would thus be reasonably foreseeable as a response to the hazard created by the original negligence of Moris. The evidence does not compel a finding that Peterson was in fact aware of the hazard in sufficient time to avoid the collision by the exercise of due care. In such situations, the second actor's negligence is not foreseeable as a matter of law.[7]

Accordingly, although the jury could have found Peterson's negligence to be a superseding cause of the collision and therefore to have insulated the negligence of Moris, it did not do so. The evidence presented a question of fact upon which reasonable men may differ and the court properly sustained the jury's determination.

Affirmed.

---

[6] Benson v. Hoenig, 228 Minn. 412, 37 N. W. (2d) 422.

[7] Barclay v. O'Dell, 266 Minn. 393, 123 N. W. (2d) 681; Sims v. Hallett Const. Co. 247 Minn. 339, 77 N. W. (2d) 54; Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526; Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221; Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788.