RODNEY C. SIMS AND ANOTHER v. HALLETT
CONSTRUCTION COMPANY AND OTHERS.
GARY C. BENNYHOFF, RESPONDENT.

77 N. W. (2d) 54.

May 18, 1956—Nos. 36,633, 36,634.

340

*J. J. Willenbring* and *Nilles, Oehlert & Nilles,* for appellant.

*Rosengren, Rufer & Blatti,* for respondent Gary C. Bennyhoff.

*Ryan, Ryan & Ebert,* for respondents Sims.

MURPHY, JUSTICE.

Actions by Marilyn Sims for personal injuries and by her husband, Rodney C. Sims, for property damage, medical expenses, and loss of his wife's services against Gary C. Bennyhoff, Alice Welch, and Hallett Construction Company, arising out of an automobile collision. The trial court directed a verdict in favor of defendant Alice Welch, d.b.a. Service Cab Company. Following a jury verdict in favor of each plaintiff against the remaining two defendants, the defendant Hallett Construction Company moved for judgment notwithstanding the verdict or in the alternative for a new trial in each case. From the orders denying the motions, the Hallett Construction Company appeals.

The accident here involved occurred on U. S. Highway No. 10, which runs generally east-west, near its intersection with U. S. Highway No. 75 between Dilworth and Moorhead. It occurred in the late afternoon of August 21, 1953. The day was clear and warm and the pavement dry. The Hallett Construction Company was on that date engaged in surfacing U. S. Highway No. 75. In carrying

out that work, the company had batch trucks hauling dry cement from a point south of No. 10 to the construction site north of that highway. Flagmen employed by the construction company were stationed about 150 feet on each side of the truck-crossing point to control traffic on No. 10 and allow the trucks to pass.

Approaching this scene from the east was a cab operated by the Service Cab Company. The cab was followed by a Nash Sedan automobile driven by one of the plaintiffs, Rodney C. Sims, who with his wife and two small children was on a vacation trip to the west coast. Following the Sims car was an automobile operated by the respondent Bennyhoff who was accompanied by another passenger. Bennyhoff was a university student engaged in vacation work as a roofing salesman and was on his way to Fargo, North Dakota, where he had a social engagement that evening. It appears that the three automobiles were in good mechanical condition and approached the point described at about 40 miles per hour, properly spaced to allow stopping without a collision at that speed.

When the lead car, the cab, was almost upon the company's flagman, it was suddenly flagged to a stop, coming to rest about a car length west of the flagman. The plaintiff Sims, next in line, observed the flagman, saw the cab stop, and brought his car to a halt alongside the point where the flagman was standing. Sims had ample time to comply with the flagman's signal without resorting to a sudden emergency stop. After stopping, Sims suggested to his wife that she roll down the right front window so that he could ask the flagman the reason for the stop, and when she did not do this immediately he reached over to do so himself. At this moment his car was struck from the rear by the third car in line, operated by the defendant Bennyhoff, with such violence that it was propelled against the taxicab ahead of him, driving the cab forward a distance of about 40 feet after the contact.

Bennyhoff testified that, when he was a block and a half east of the scene of the accident, he saw the flagman standing either on the shoulder or the edge of the pavement holding a red flag attached to a stick. He was aware of the fact that he was in a construction zone.

As he approached the scene from a block and a half back, he was traveling four or five lengths behind the Sims car at a speed of from 40 to 45 miles per hour. The rear stoplights on the Sims automobile were in good working order, but Bennyhoff testified that he did not see them until he was about 60 feet east of the point of contact at which time he was going about 30 miles per hour. He testified that between the time he first saw the stoplights ahead of him and the time of the collision his speed did not decrease. He said that from about 80 to 100 feet he directed his attention to the flagman who was making some type of equivocal motion with the flag which he interpreted as a "proceed signal." When he saw this signal he was "rather thankful that we were not being stopped." He put his foot on the accelerator, then, noticing that plaintiff's car was stopped about 60 feet ahead of him, applied his brakes but struck the plaintiff's car at a speed of about 30 miles per hour.

■ Bennyhoff's negligence is so clear from the evidence that the jury's finding has not been questioned. Though the Hallett Construction Company argues the point, it seems equally clear that there is sufficient evidence supporting the finding of negligence on its part through its flagman. The flagman stopped a line of vehicles suddenly and, as the jury could well have found, without any reason except that he was somewhat confused about whether or not a truck was approaching the crossing. The jury may also have found that, after stopping the first two vehicles, he manipulated his flag in such a way that it was difficult to tell what signal he intended. That such actions by a person charged with the duty of directing traffic could be found by the jury to constitute negligence cannot be seriously questioned.

■ The Hallett Construction Company contends that the negligence of its flagman is not the proximate cause of plaintiff's damages because the chain of events set in operation by its negligence was broken by a superseding cause. The superseding cause to which it points is the act of Bennyhoff in blindly driving into the rear of plaintiff's automobile which, it is argued, is an extraordinarily negligent act insulating the flagman's original negligence from the effi-

cient chain leading to the accident. Restatement, Torts, § 447. The respondent Bennyhoff contends that the sudden and unnecessary stop caused by the flagman and the flagman's subsequent actions set in motion a chain of circumstances from which the accident might reasonably have been expected; that his act in colliding with the vehicle ahead of him was a foreseeable event within the scope of defendant's original fault. Benson v. Hoenig, 228 Minn. 412, 37 N. W. (2d) 422.

Bennyhoff's claim that the flagman, at the time he caused the sudden stop, should have realized a collision would ensue may be readily disposed of by a realistic appraisal of the facts. The foreseeable risk created by the flagman's negligence in suddenly stopping the vehicles was that one of the cars in line would not have sufficient time to stop without hitting the car in front of it. But the record establishes that defendant Bennyhoff had ample time to stop. The existing conditions were the same as if the flagman's signal to stop had been properly given. The cab had come to rest; the second car behind it had safely stopped in sufficient time. The defendant Bennyhoff had ample notice that the traffic had been halted in time to safely stop and, had he maintained a semblance of care, the accident would not have happened.

■ As to the Hallett Construction Company's contention regarding superseding cause, we are controlled by Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788, wherein this court approved the statement in Kline v. Moyer, 325 Pa. 357, 364, 191 A. 43, 46, 111 A. L. R. 406, 410, wherein it is stated (220 Minn. 360, 19 N. W. [2d] 792):

"* * * Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause."

And in Barrett v. Nash Finch Co. 228 Minn. 156, 160, 36 N. W. (2d) 526, 529, we said:

"* * * Where the driver of an automobile plainly sees another automobile upon the highway in time to avoid a collision and negligently fails to do so, the driver's negligence is an intervening, efficient, and the proximate cause of the collision, insulating the prior negligence of the driver of the automobile with which he collided and reducing it to a mere occasion or condition."

Taking Bennyhoff's testimony, which is evasive and confusing, and giving it every fair intendment, it appears that he first saw the flagman, who was then making no signal, from about one and a half blocks, at which time he was traveling about 40 to 45 miles per hour and was four to five car lengths behind the plaintiff's car. When the plaintiff's car was adjacent to the flagman, Bennyhoff, who was then 60 to 80 feet back and proceeding at about 30 miles per hour, directed his attention to the flagman and observed the equivocal signal which he understood to be a direction to proceed. After looking at the flagman "a second or two," he again directed his attention to the plaintiff's car which was still 60 feet ahead of him and noticed the stoplights were on. Although then traveling about 30 miles per hour, with the plaintiff's car in full view ahead of him, he ran into it without decreasing his speed. He testified that he could have seen both plaintiff's car and the flagman át the same time but for some reason unexplained did not do so. The flagman was standing adjacent to the car displaying his red flag, while the red stoplights of the car were in full view. How he could have centered his attention on one to the exclusion of the other, both being in his direct line of vision, is not explained. It is equally difficult to understand his avowed failure to notice any indication that the vehicles ahead of him had stopped. Sims had received the flagman's stop signal some distance before, had immediately applied his brakes, and had stopped close to the flagman. If, as Bennyhoff testified, he was looking ahead at plaintiff's car until he directed his attention exclusively to the flagman, he would have to have seen plaintiff's stoplights or at least have noted that plaintiff's car was stopped. The record does not support Bennyhoff's claim that he was not apprised of the danger until his own negligence (220 Minn. 360, 19 N. W. [2d] 792) "added

to that of the existing perilous condition" made the accident inevitable so as to impose liability upon both joint tortfeasors. Medved v. Doolittle, *supra*, citing the Pennsylvania rule.

It is apparent that Bennyhoff's failure to avoid the collision after having notice of the dangerous condition, by his failure to slow down or stop, by failure to observe the movements of the automobiles in clear view ahead of him, and by proceeding into the rear end of the Sims car, were intervening acts and omissions which constituted a superseding cause relieving the original actor of liability. Restatement, Torts, §§ 440, 441, 447; Medved v. Doolittle, *supra;* Barrett v. Nash Finch Co. *supra;* Kedrowski v. Czech, 244 Minn. 111, 69 N. W. (2d) 337.

■ There was evidence that following the unwarranted stop, the flagman pointed his flag to the ground and moved it back and forth, an act interpreted by Bennyhoff to indicate that the cars were being flagged through. It is urged this is a separate act of negligence which should be considered as the proximate cause of the accident. Bennyhoff testified that the flagman's equivocal signal confused and distracted him, and we may assume from the verdict that the jury considered this evidence as bearing on the negligence of the flagman. Bennyhoff said he believed the signal was a direction to proceed and he was "rather thankful" that he was not being inconvenienced by a delay. In point of time, the alleged distracting conduct of the flagman occurred as he was standing alongside the Sims car and immediately prior to the collision. It is urged that the flagman's presence and conduct constituted a distraction making the question of Bennyhoff's negligence one for the trier of fact. Bennyhoff relies on Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846.

The presence and conduct of the flagman at the time the equivocal signal was given may not be considered separate and apart from the accumulated circumstances preceding the collision of which Bennyhoff had ample notice. The signal to proceed, if such it was, was directed to the car ahead. It was no more a signal for Bennyhoff to proceed into the rear of the Sims car than would be the changing

of an automatic stoplight. at an intersection. The case of Twa v. Northland Greyhound Lines, Inc., does not apply because the record here does not disclose distracting circumstances which would excuse Bennyhoff's failure to make timely discovery of the halted traffic ahead of him.

Moreover, the anomalous contention, if accepted, would result in a holding that the very thing that puts a driver on notice that he is in a construction zone and must exercise care commensurate with existing conditions[1] is the thing that will relieve him of having to act with as high a degree of care as would be required of him under a normal situation.

We hold on review of the entire record that the evidence establishes as a matter of law that Bennyhoff's negligence was an efficient intervening, or superseding, cause of the accident. The Hallett Construction Company therefore cannot be held liable for the damages sustained by the plaintiffs.

Reversed and judgments ordered for defendant Hallett Construction Company.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.

---

[1]Olson v. Hector Const. Co. Inc. 216 Minn. 432, 13 N. W. (2d) 35.