Gary SIRNA and Ruby Sirna,
Respondents,

v.

APC BUILDING
CORPORATION, Appellant.

No. WD 37996.

Missouri Court of Appeals,
Western District.

April 14, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1987.

John H. Williams, III, James S. Parr, Slagle and Bernard, Kansas City, for appellant.

Timothy H. Bosler, Liberty, for respondents.

Before CLARK, C.J., and NUGENT and LOWENSTEIN, JJ.

CLARK, Chief Judge.

Plaintiffs below, Gary and Ruby Sirna, had judgment against APC Building Corporation for injuries Gary sustained when he fell into an elevator shaft in a building owned by APC. The latter appeals, and raises issues which generally contest the sufficiency of the evidence to establish plaintiffs' case.

The cause was tried to the court sitting without a jury. The decision found in favor of plaintiffs, but apportioned fault 75 percent to Gary and 25 percent to APC. Gary's damages were set at $160,000 and Ruby's at $20,000. After applying the percentages of fault, the resulting judgments were $40,000 and $5,000 respectively. This aspect of the case is not in issue. The appeal turns primarily on evaluation of the evidence assuming, of course, its effect most favorable to plaintiffs' cause.

The accident occurred July 17, 1982 in a two story and basement mercantile building owned by APC. Prior to this date, Gary and John Huffman, president of APC, had discussed a possible lease of the first floor to be used by Gary for a restaurant business. No lease had been concluded, but Huffman had agreed to permit Gary to move some fixtures into the space with the understanding that if a lease agreement were not consummated, a daily rental would be charged for actual occupancy. The July 17 meeting between Gary and Huffman was for the purpose of further negotiations and to discuss remodeling plans in which Huffman, an architect, was to provide assistance.

On the date of the accident, Gary and Huffman entered the building together intending to go to Huffman's office on the second floor to review plans. Gary proceeded first along the first floor corridor toward the rear of the building where a freight elevator was located. At the first floor entrance to the elevator, a wooden slat gate protected the otherwise open passage to the elevator shaft. The gate was equipped with an interlock device intended to prevent the gate from operating unless the elevator car was at that floor level.

Gary had previously been instructed by Huffman on the operation of the elevator.

The elevator cab or car had no doors or gate and could therefore be entered once the wooden floor gate was raised. Artificial illumination in the corridor adjacent to the elevator was dim and the elevator cab was lighted by a fixture which was normally turned off when the car was not in use. As Gary approached the elevator gate on the date of the accident, he faced a darkened opening in which he assumed the elevator car was located. He raised the gate intending to step into the car and turn on the light. The car, however, was at the second floor level and Gary fell into the elevator pit some twenty-five feet below. Quite apparently, the interlock device on the wooden gate failed permitting the gate to be raised even though the car was not at the first floor level.

In its decision on the issue of liability, the trial court made various findings as to the unsafe condition of the elevator. These included: (a) the interlock device was not in proper working order; (b) no lighting was maintained in the elevator car and lighting in the adjacent hallway was inadequate; (c) prudent maintenance had not been performed on the elevator; and (d) required city inspections of the elevator had not been made. These findings supported the judgment of liability tempered as to damages by the finding of contributory negligence on Gary's part in failing to perceive the danger.

■ On the first point on appeal, APC argues that the finding of its negligence with respect to artificial lighting in the first floor corridor erroneously attributes responsibility for an area of the building which was under the exclusive control of the tenant, Gary. APC cites cases such as *Dunlap v. Howard*, 629 S.W.2d 664, 666 (Mo.App.1982), which hold generally that where premises are leased with concurrent surrender of control, the landlord is not liable for injuries which the tenant sustains because of a defective condition in the premises.[1]

In this case, appellant's theory is valid only if the evidence proved there was an agreement between Gary and APC which gave Gary exclusive control over the first floor corridor. The evidence proved no such arrangement but, to the contrary, gave rise to an inference that the corridor was a common area used by APC and at least one other tenant.

The first erroneous assumption indulged in by APC is that a lease of the first floor had been made. In fact, the most which was shown was that Huffman had agreed to an arrangement for temporary storage of fixtures from day to day and subject to continuing negotiations of possible lease terms. The parties had not defined a particular area but were obviously proceeding on a non-specific verbal understanding. There was no proof at all which would support a claim that any part of the first floor was exclusively under Gary's control.

Moreover, the claim that only the first floor tenant could use the first floor entrance to the elevator is patently absurd. According to Huffman's testimony, he maintained his office on the second floor, an insurance agency also rented space on that floor and the basement was rented for use as a cabinet shop. The elevator would serve no purpose to basement and second floor tenants if they could neither enter nor leave at the first floor level. Huffman did acknowledge that the elevator was used infrequently although he was observed by witness Downs riding in it. Downs himself used the elevator to reach each floor where electric meters were to be read. Finally, the events on the date of the accident, at which time Gary and Huffman were intending to use the elevator to go to Huffman's office on the second floor, demonstrate the

1. This general rule is subject to numerous exceptions. The landlord is liable if he has knowledge of a dangerous condition not discoverable by the tenant and fails to make disclosure. *Reckert v. Roco Petroleum Corp.*, 411 S.W.2d 199, 205 (Mo.1966). If a landlord undertakes to make repairs to premises under the exclusive control of the tenant and does so negligently, the landlord is liable for injuries resulting from defects attributable to the repairs. *Coates v. Dewoskin*, 379 S.W.2d 146, 148 (Mo.App.1964).

non-exclusive nature of first floor access to the elevator.

In *Janis v. Jost*, 412 S.W.2d 498, 503 (Mo.1967), the court stated that in determining the liability of a landlord for personal injury to a tenant caused by a defective condition in the premises, it was essential to distinguish between cases where the tenant was put in full possession and control of the area involved and cases where the landlord reserved the area for common use by his tenants as a group. In the former class of cases, except those involving latent defects, the landlord is under no liability. In the latter class of cases, the landlord is answerable in damages for failure to keep the premises in reasonably safe condition. The subject case is within the latter group and the trial court was therefore correct in citing the deficient lighting in the corridor as one basis for holding APC liable on respondents' claim.[2]

In its second point, appellant contends the court erred in finding the issue of liability in favor of plaintiffs; because the evidence showed there was no causal connection between acts or omissions of APC and Gary's injury. This argument is based entirely on the following exchange which occurred between APC's attorney and Gary in the course of cross-examination:

"Q. And you pulled up the slat gate and stepped into the black hole; is that correct?

A. That's correct.

Q. Did you look before you stepped in?

A. No. The door opened up. I had no reason to look."

According to appellant, it made no difference in the event whether the elevator or the corridor were lighted because, having failed to look, Gary would not have noticed the absence of the elevator car.

 Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff. *Zafft v. Eli Lilly & Co.*, 676

S.W.2d 241, 244 (Mo. banc 1984). If a causal connection exists, it is said that the negligence charged was the proximate cause of the injury. Proximate cause, and hence, a causal connection, are present if the evidence shows the negligence to have been the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. *Clary v. United Telephone Co.*, 670 S.W.2d 936, 941 (Mo.App.1984). An intervening resulting cause is a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury. *Love v. Deere & Co.*, 684 S.W.2d 70, 75 (Mo.App. 1985).

The direct and proximate cause of the accident in this case was the failure of the elevator gate interlock. Had that device operated as it was intended to operate, and as Gary was told it operated, the gate could not have been opened and Gary would have been alerted to the fact that the car was at another level. The absence of lighting in the corridor would have been irrelevant if the gate had been in working order. Whether adequate lighting would have prevented the accident is a matter for speculation and conjecture. Gary knew the fixture in the elevator car was only illuminated when the elevator was put to use and he therefore expected the shaft area to be in darkness. As he himself testified, he relied on the operation of the gate as signifying the presence of the elevator cab at the first floor.

On close analysis, it appears the trial court's findings of negligence with respect to illumination of the elevator car and the corridor were superfluous because the malfunction of the gate coupled with a failure by APC to perform prudent maintenance,

---

**2.** In the argument on the point, appellant ignores the other findings, the malfunction of the interlock, the absence of lighting in the car and the failure to perform maintenance, which would support the judgment on liability even were the claim of error under this point sustainable.

were enough to support the finding of liability. Appellant therefore makes no point of reversible error even were it to be accepted that inadequate illumination was not an efficient cause of the accident.

In a subsidiary point, appellant contends there was no proof sufficient to support liability on the ground of failure of the elevator gate, even assuming a causal relation between the condition of the gate and the accident, because plaintiffs did not prove the gate interlock was defective or that inspection or maintenance would have detected the problem.

Under the evidence, it was apparent that the lock failed to perform its function because Gary was able to raise the gate when the elevator cab was not at that floor level. It was also undisputed that the elevator provided service to all building tenants as a common facility and that the elevator was under the management and control of the building owner, APC. Such maintenance as was done to the elevator was by APC.

The doctrine of res ipsa loquitur is available to relieve a plaintiff from the burden of proving specific negligence when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentality involved was under the management and control of the defendant; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. *Bass v. Nooney Co.,* 646 S.W.2d 765, 768 (Mo. banc 1983). The requirement that the instrumentality be under the management and control of the defendant does not mean actual physical control, but the right of control. If there be a divided control of the instrumentality, a plaintiff is barred from recourse to the doctrine only if the plaintiff's control was related to the cause of the casualty. *Niman v. Plaza House, Inc.,* 471 S.W.2d 207, 209 (Mo. banc 1971). Thus, in *Niman,* where the plaintiff was injured by escaping hot water from a ruptured radiator fitting in a rented apartment, plaintiff was entitled to rely on res ipsa loquitur because the defendants owned, controlled and operated the heating system and plaintiff's use of a control knob was not a factor in the accident.

The present case involves the identical concept discussed in *Niman.* The elevator was provided by APC for use of building tenants. Although each tenant would operate the elevator to serve his own convenience, the elevator was in the general charge of APC which maintained the machinery. It was not Gary's act in raising the gate which caused the casualty, but the failure of the interlock device attuned to movement of the car from floor to floor. The plaintiffs here made their case by the evidence presented and were not required to prove why the interlock failed or what remedial action should have been taken.

In its next point, APC argues that the trial court erred when it found the violation by APC of certain ordinances of the City of Kansas City constituted proof of APC's negligence. APC contends the plaintiffs' petition did not properly plead the ordinances and that they were improperly received in evidence over objection.

In all, six municipal ordinances were involved. The findings entered by the court held APC to have violated ordinances regulating elevator car gates, electrical interlocks for hoist way doors, illumination inside elevator cars, illumination in building corridors at elevator landing sills and inspections and maintenance. The plaintiffs' petition referred to the ordinances by number and by rules, alleged generally the deficiencies in the elevator gate, the lighting and the maintenance, but did not quote the ordinances or rules themselves and did not allege the substance of the ordinances. Citing *Schmitt v. City of Hazelwood,* 487 S.W.2d 882, 886 (Mo.App.1972), APC argues that a failure by plaintiffs to plead the ordinances in haec verba precluded the court from admitting the ordinances in evidence.

Appellant misconstrues the holding in *Schmitt.* There, the petition pleaded ordinance section numbers and defendants moved to dismiss on the ground the petition failed to state a cause of action. The court held that because judicial notice may not be taken of city ordinances, the petition

did not contain a sufficient basis to ascertain whether the city's conduct in issuing a special use permit violated the ordinance. For purposes of ruling a motion to dismiss for failure to state a cause of action, a municipal ordinance will not aid the pleader's case unless the substance and content of the ordinance are set out in the pleading. Because municipal ordinances may not be judicially noticed, they must be proved by evidence as any fact in a case. *General Motors Corp. v. Fair Employment*, 574 S.W.2d 394, 400 (Mo. banc 1978); *Schweig v. City of St. Louis*, 569 S.W.2d 215, 225 (Mo.App.1978).

In this case, APC did not file a motion to dismiss nor did it move to make the petition more definite in respect to the ordinances. The issue decided in *Schmitt*, and also in *Schweig*, was therefore never presented for decision. What APC has attempted to argue is that the asserted defect was preserved by APC's answer, where it was generally alleged that the petition did not state a cause of action, and by objection at trial when plaintiffs offered the text of the ordinances in evidence.

■ The violation of a statute or ordinance is negligence per se, provided that the violation was the proximate cause of the injury. *Downing v. Dixon*, 313 S.W.2d 644, 650 (Mo.1958). A pleading which relies on an ordinance violation as a ground to prove negligence therefore states a cause of action, but if the ordinance is not fully set out, the pleading is conclusionary and is subject to a motion to make more definite or to dismiss. Where the petition does allege a cause of action but is only deficient in matters of particularity and detail, the deficiencies are waived by failure to object by motion. *R __ v. M __*, 383 S.W.2d 894, 899 (Mo.App.1964), and cases there cited.

It is apparent in this case that had APC raised the present objection at the pleading stage, plaintiffs could have overcome the objection by amending their petition to include the text of the ordinances. For tactical reasons, a defendant may choose not to present such a question by motion and if the plaintiff overlooks the necessity to offer the ordinances in evidence, the proof fails for the reasons previously discussed. Alternately, however, if the issue is not raised by motion, any deficiency in the pleading of this nature is waived and an objection to the proof of the ordinances at trial comes too late. The objection by APC here was properly overruled.

Appellant next asserts that the trial court was in error in finding it to have been in violation of the city ordinances requiring interlocks on freight elevator gates and corridor illumination. APC says the evidence showed an interlock device was on the elevator gate in question and there was no proof the illumination was less than five-foot candles. The point is specious and frivolous. It cannot seriously be contended that inoperative devices meet the code requirements. The evidence was undisputed that the gate lock did not engage and therefore Gary was able to raise the barrier even though the elevator cab was at another level. In addition, there was evidence that the corridor was dark. The point lacks any merit.

■ Finally, appellant asks that this court modify the rule of comparative fault announced in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). It argues that the doctrine of pure comparative fault is unfair in awarding recovery to a claimant who is more than fifty percent at fault in the casualty. This court has no authority to adopt such a proposition because we are bound by the *Gustafson* decision. Article V, § 2, Constitution of Missouri.

The judgment is affirmed.

All concur.