**Maxine C. DONHAM, Respondent,**

**v.**

**Randy SAMO & Curtis Trucking, Inc., Appellants,**

**and**

**Kiewit Western Company and Exco, Inc., Respondents.**

**No. WD 45356.**

Missouri Court of Appeals,
Western District.

Oct. 13, 1992.

Donald W. Vasos, Kansas City, for appellants.

Anita Porte Robb, Kansas City, for Donham. Robert M. Kroenert, Kansas City, for Kiewit Western Elec. Co. Jeanne Haas McKenna, Kansas City, for Exco, Inc.

Before KENNEDY, P.J., and SPINDEN and SMART, JJ.

SPINDEN, Judge.

On June 5, 1987, an 18–foot tractor-trailer driven by Randy Samo crashed into the rear of Maxine C. Donham's car in a construction zone on U.S. 71 in Grandview. Donham sued Samo and the tractor-trailer's owner, Curtis Trucking, Inc., for negligence, and she sued Kiewit Western Company and Exco, Inc., which were performing the construction work at the site, for negligently failing to control and warn traffic entering the construction zone. Samo and Curtis Trucking filed cross claims against Kiewit and Exco for negligence and sought contribution should Samo and Curtis Trucking be found liable to Donham.

At trial, at the close of Donham's case, the trial court granted Kiewit's and Exco's motions for a directed verdict against Donham. At the close of Samo's and Curtis Trucking's case, the trial court granted Kiewit's and Exco's motions for a directed verdict against Samo's and Curtis Trucking's cross claims. The jury returned a verdict of $200,000 in Donham's claim against Samo and Curtis Trucking.

In this appeal, Samo and Curtis Trucking contend that the trial court erroneously directed a verdict against their cross claims against Kiewit and Exco. They also complain that the trial court erroneously instructed the jury concerning the "rear-end doctrine." Although we conclude that the instruction was proper, we reverse the trial court's judgment because it erroneously granted Kiewit's and Exco's motions for a directed verdict against Samo's and Curtis Trucking's cross-claim.

### Directed Verdict

A directed verdict is a drastic measure and should be granted only if reasonable and honest persons could not differ on a case's outcome. *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 833 (Mo.App.1984). In reviewing a motion for a directed verdict, we must consider all of the evidence in the light most favorable to the non-moving party, accept as true all evidence that is not entirely unreasonable or opposed to physical laws, accord to the non-moving party the benefit of all inferences deducible from that evidence and reject all unfavorable inferences, and disregard the moving party's evidence except to the extent that it aids the non-moving party's case. *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo. App.1982).

The evidence favorable to Samo and Curtis Trucking showed that one of Exco's flagger's, James Kelly, abruptly, without warning, caused cars traveling in a construction zone to come to a sudden stop. A witness testified that Kelly, while walking along side the highway, suddenly began waving his arms for cars to stop. This occurred during morning rush hour and where only one lane was open. The witness testified that Kelly was wearing ordinary work clothes—not the orange, yellow or red clothing typically worn by highway construction flaggers—and did not have a flag. None of the witnesses could recall whether they saw a warning sign indicat-

ing that drivers should be prepared to stop posted in the construction zone.

Samo told jurors that he was keeping his tractor-trailer about two to three truck lengths behind Donham's car and was obeying the posted speed limit of 40 miles per hour. He said traffic was moving at a steady pace when he noticed in his rear view mirror that the car behind him maneuvered as though it intended to pass him. This concerned him because it was just before the lanes narrowed from two to one. He said that as he watched this car, the cars in front of his truck—Donham's car, a van driven by Jack Burkhart, and another car driven by Penny Parker—began braking hard to a sudden stop.

Samo testified that when he realized that the vehicles in front of his truck were stopping, he hit his brakes and steered right to swerve around Donham onto the right shoulder. He said that as he did that, the car behind him pulled along side his truck on the right shoulder, so he then tried to drive into the closed left lane but could not because a construction worker was standing in it.

Samo said that, as he applied his brakes, his tires skidded through sand on the asphalt pavement. He said he steered to the right of Donham's car, but his truck's left front hit the back of the car. Donham's car was either completely stopped or nearly stopped when Samo's truck slammed into it. Samo's truck stopped on the highway's right shoulder, and one of its wheels dropped off the shoulder. As Samo began getting out of the truck, it rolled over onto its side into the ditch.

Samo and Curtis Trucking contend that the trial court should have submitted their claim of negligence against Kiewit and Exco to the jury and should not have directed a verdict for Kiewit and Exco on these facts. We agree. Although their evidence was controverted, it made a submissible case of negligence against Kiewit and Exco.

"Negligence is ordinarily a jury question, and where different, reasonable conclusions may be supported by the facts in the case, the question of negligence is almost always for the jury." *Smith v. Gravois Rest Haven, Inc.*, 662 S.W.2d 880, 883 (Mo. App.1983). The jury in this case had sufficient evidence from which to conclude that the flagger, inappropriately dressed, stopped the vehicles suddenly with insufficient or no warning and that this was improper traffic management.

Kiewit and Exco argue, however, that even if the flagger was negligent, Samo's own negligence was the superseding cause of the accident and no substantial evidence showed that Kiewit and Exco were the proximate cause of the accident. We disagree.

The Supreme Court of Missouri has set forth this test of proximate cause:

[W]hether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence[.] "Thus, from the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable." The cases discussing proximate cause contain the exasperating caveat that in deciding questions of proximate cause and efficient, intervening cause, each case must be decided on its own facts, and it is seldom that one decision controls another.

*Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 710 (Mo.banc 1990) (emphasis in the original) (citations omitted). "Proximate cause, and hence, a causal connection, are present if the evidence shows the negligence to have been the efficient cause which set in motion the chain of circumstances leading up to the injury." *Sirna v. APC Building Corp.*, 730 S.W.2d 561, 564 (Mo.App.1987).

■ The jury had sufficient evidence from which to conclude that the flagger's abrupt actions and lack of warning set in motion the chain of circumstances leading up to the injury. They could have concluded that the accident was a natural and probable consequence of the flagger's actions. Kiewit and Exco contend, however, that Samo's negligent driving was, as a

matter of law, a superseding and intervening cause of the accident. "An intervening resulting cause is a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury." *Id.* at 564.

Too many facts issues were in dispute for us to agree with Kiewit and Exco. Undetermined issues included the vehicles' speeds and where they were in relation to each other at the time of the flagger's actions and the stopping distance of Samo's truck. The jury should have been allowed to determine whether the flagger's actions were sufficient to allow all oncoming traffic to come to a safe stop and should have been allowed to weigh the witnesses' contradictory testimony.[1] Further, it should have been allowed to determine whether Kiewit and Exco had placed warning signs within the construction zone which would have alerted Samo that a flagger was stopping traffic.

The jury could have concluded that Samo's actions did not interrupt the chain of events produced by the flagger's negligence and that the flagger's actions were the proximate cause of Donham's injuries, or it could have found that the flagger's actions constituted comparative fault and assessed a percentage of liability against Kiewit and Exco. *See Hansen v. James,* No. WD 45101, slip op. at 12, 1992 WL 166215 (July 21, 1992). Sufficient evidence existed to submit these issues to the jury. The trial court erroneously granted Kiewit's and Exco's motions for directed verdict.

Kiewit relies heavily on *Sims v. Hallett Construction Company,* 247 Minn. 339, 77 N.W.2d 54 (1956), in which the Supreme Court of Minnesota found that a driver's negligence was, as a matter of law, the superseding cause of an accident which relieved a flagger and construction company from liability. The court stated:

The foreseeable risk created by the flagman's negligence in suddenly stopping the vehicles was that one of the cars in line would not have sufficient time to stop without hitting the car in front of it. But the record establishes that [the driver] had ample time to stop. The existing conditions were the same as if the flagman's signal to stop had been properly given. The cab had come to rest; the second car behind it had safely stopped in sufficient time. The [driver] had ample notice that the traffic had been halted in time to safely stop and, had he maintained a semblance of care, the accident would not have happened.

*Id.* 77 N.W.2d at 57. The *Sims* court was dealing with facts as determined by a jury, not with a directed verdict. The trial court had submitted the negligence of the driver and the flagger to the jury for a determination of the underlying facts.

Those facts were in issue in this case. The trial court should have permitted the jury to determine whether Samo had ample notice to stop. In granting Kiewit's and Exco's motions, the trial court emphasized that no one could testify that they saw the flagger "jump out" in front of the oncoming traffic to stop it. The trial court, however, overlooked the testimony of one of the witnesses that the flagger abruptly, without warning, stopped the cars causing him and the cars ahead of him to brake hard to sudden stops.

Kiewit also argues that the trial court properly directed the verdict because Exco was an independent contractor and because Kiewit had complied with all of the plans and specifications of the Missouri State Highway Commission's contract. The record does not establish that as a matter of law Exco was an independent contractor. Although Kiewit claims that it was not required by the Highway Commission to post signs warning of a flagger and that it complied with all the Highway Commission's sign-posting requirements, fact issues still remained: whether it had failed

---

1. For instance, Parker, who was driving the lead car, said she saw the flagger in plenty of time to stop and was able to come to a smooth, nonskidding stop. Burkhart, driving the second car in the line, said he did not see the flagger until the very last minute and that he and the other cars had to brake to make sudden stops.

to post warning signs; whether such a failure, notwithstanding the Commission's not requiring it, was negligent; whether the flagger's dress and his actions were negligent.

### Rear–End Doctrine

Samo and Curtis Trucking allege that the trial court erred in submitting the case to the jury under the "rear-end doctrine." That instruction provided:

> Your verdict must be for plaintiff Maxine C. Donham and against defendants Randy Samo and Curtis Trucking, Inc., if you believe:
>
> First, either:
>
> defendant Samo's vehicle came into collision with the rear of plaintiff Maxine C. Donham's automobile, or
>
> defendant Samo drove at an excessive speed, or
>
> defendant Samo failed to keep a careful lookout, or
>
> defendant Samo was following the plaintiff's automobile too closely, and
>
> Second, defendant Randy Samo, in any one or more of the respects submitted in paragraph First, was thereby negligent, and
>
> Third, such negligence directly caused or directly contributed to cause damage to Maxine C. Donham.

■ In determining whether Donham was entitled to submit her case under the rear-end doctrine, we must view the evidence in the light most favorable to her, give her the benefit of all favorable inferences arising from the evidence, and disregard Samo's and Curtis Trucking's evidence except to the extent that it would aid Donham. *Porter v. Bi–State Development Agency,* 710 S.W.2d 435 (Mo.App.1986).

The rear-end doctrine provides:

> [I]f one person has his vehicle in a portion of the highway where he should have it in view of the course in which he is proceeding and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such

other driver in charge of the overtaking vehicle. Evidence to this effect, if believed by a jury, supports a finding of negligence against the driver of the overtaking vehicle.

*Id.* at 436. The doctrine's rationale is that the driver of the vehicle behind has a view of what is in front and is in a better position to explain why his or her vehicle struck the rear of the car ahead. *Mueller v. Storbakken,* 583 S.W.2d 179 (Mo.banc 1979). The doctrine is applicable only "where the facts come strictly within the pattern of the typical rear-end collision situation." *Witherspoon v. Guttierez,* 327 S.W.2d 874, 878 (Mo.1959).

■ Samo and Curtis Trucking contend that this was not a typical rear-end collision because the highway was under construction, the traffic flow was unusual, and the highway's normal control and operation were significantly altered. These conditions are typical of highway construction sites which motorists encounter frequently on this state's highways. These conditions heightened Samo's responsibility to keep a careful lookout.

Samo and Curtis Trucking do not dispute that Samo struck the rear of Donham's car and that Donham's car was where it was entitled to be. Donham adduced evidence that Samo's truck was traveling more than 60 miles per hour in a zone restricting speed to 40 miles per hour. The trial court properly submitted the rear-end doctrine instruction to the jury.

### Conclusion

Although the trial court correctly instructed the jury concerning the rear-end doctrine, it erred in sustaining Kiewit's and Exco's motions for a directed verdict against Samo's and Curtis Trucking's cross-claim. We, therefore, reverse the trial court's judgment and remand the case for a trial of Samo's and Curtis Trucking's claim against Kiewit and Exco.

All concur.